KENT COUNTY, STATE OF MARY-
LAND, Defendant Below, Appel-
lant, Cross–Appellee,

v.

Steven A. SHEPHERD and Mary G.
Cline, Plaintiffs Below, Appellees,
Cross–Appellants.

Steven A. SHEPHERD and Mary G.
Cline, Plaintiffs Below, Appellants,
Cross–Appellees,

v.

Timothy S. KNAPP and the State
of Maryland, Defendants Below,
Appellees, Cross–Appellants.

Nos. 187, 1996, 210, 1996.

Supreme Court of Delaware.

Submitted: June 16, 1998.
Decided: July 16, 1998.

Gerald I.H. Street, and William C. Wagner, II, of Twilley & Street, P.A., Dover; David M. Funk (argued) and Steven J. Troy, of Funk & Bolton, P.A., Baltimore, MD, for Kent County, State of Maryland.

Victor F. Battaglia (argued), of Biggs & Battaglia, Wilmington; Steven G. Hildenbrand, Kimberly Smith Ward, and Regina Hollins Lewis, Office of the Attorney General of Maryland, Baltimore, MD, for Timothy S. Knapp and State of Maryland.

Charles P. Brandt (argued) and Bartholomew J. Dalton, of Brandt & Dalton, P.A., Wilmington, for Steven A. Shepherd and Mary G. Cline.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ. (constituting the Court en Banc).

HOLLAND, Justice.

This action arose from an automobile accident in New Castle County, Delaware. Steven A. Shepherd ("Shepherd") and Mary G. Cline ("Cline") filed a complaint in the Superior Court of the State of Delaware against Timothy S. Knapp ("Knapp"), a Kent County, Maryland Deputy Sheriff; Kent County, Maryland ("Kent County"); and the State of Maryland. Shepherd and Cline were subsequently married. They are referred to collectively in this opinion as "the Shepherds." The complaint alleged that: Knapp was negligent in the operation of a motor vehicle; Knapp's negligence caused a motor vehicle accident which resulted in personal injury to the plaintiffs; and, Knapp's negligence is imputed to Kent County and the State of Maryland on the ground that Knapp was an agent, servant, and employee of both because he was operating within the scope of his employment at the time of the accident.

An arbitrator awarded Shepherd and Cline damages of $425,000 and $185,000 respectively. The Superior Court entered a final judgment in favor of Shepherd in the amount of $250,000: $200,000 against Kent County and $50,000 against the State of Maryland. The Superior Court entered a final judgment for Cline in the amount of $185,000: $135,000 against Kent County and $50,000 against the State of Maryland.

Kent County filed a direct appeal against the Shepherds. The Shepherds filed a cross-appeal against Kent County and their own direct appeal against the State of Maryland and Knapp. The State of Maryland and Knapp filed a joint cross-appeal against the Shepherds.

This Court now has before it those consolidated appeals and cross-appeals. The Shepherds contend that all of the original defendants are jointly and severally liable for the full amount awarded to each of them by the arbitrator. The State of Maryland admits that it is vicariously liable for Knapp's negligence. The State of Maryland and Knapp both contend, however, that they are each absolutely immune from liability to the Shepherds under the Maryland Tort Claims Act, because that Act waives sovereign immunity only for lawsuits brought in a judicial forum within the State of Maryland. Kent County contends that, as a matter of law, only the State of Maryland is vicariously liable for the negligent conduct by Knapp that was the proximate cause of the Shepherds' injuries.

The issues presented in this case can be resolved only by reexamining and applying some of the most fundamental principles of interstate and intrastate sovereignty which comprise the federal structure of the United States Constitution. In doing so, this Court has been guided by two opinions from the United States Supreme Court that were is-

sued during the pendency of this appeal.[1] We also gratefully acknowledge the series of oral arguments and written submissions that have been presented by the attorneys for all of the parties.

█ This Court has concluded that Knapp and the State of Maryland are jointly and severally liable for the full amount of damages awarded to Shepherd and Cline by the arbitrator. We have also determined that Kent County is not vicariously liable to the Shepherds for Knapp's negligent conduct. Accordingly, the judgments of the Superior Court are reversed.

### Facts

The facts surrounding the automobile accident are not in dispute. At approximately 8 p.m. on October 24, 1992, Knapp was driving a 1990 Ford Mustang on Route 13 near the intersection of Boulden Boulevard, in New Castle County, Delaware. As Knapp was approaching a red light, his automobile struck the rear end of another motor vehicle. The force of the impact propelled that other vehicle into the rear of the Shepherds' automobile, which was stopped at the red light. Shepherd and Cline each suffered serious back injuries as a result of the accident.

Knapp was employed by the Kent County Sheriff's Office as a deputy sheriff. As an employee of the Kent County Sheriff's Office, Knapp was assigned to the Kent County Narcotics Task Force ("the Task Force"). At the time of the accident, Knapp was on-duty as a member of the Task Force, conducting an investigation. He was driving within the State of Delaware to obtain a description of a house in Wilmington, so that the Task Force could later obtain a search warrant.

The Task Force was a joint effort of several agencies within the State of Maryland, created by contract, for the purpose of coordinating "a multi-agency law enforcement unit, the manpower and resources of which shall be directed at violations of the Maryland Controlled Dangerous Substances Act." The signatories to the Task Force Agreement (the "Agreement") intended to "implement a joint and common utilization of training and support functions as well as the pooling of investigative resources." The parties to the Agreement were the Maryland State Police, the Kent County Sheriff's Office, the Kent County Commissioners, the Chestertown Police Department, the Rock Hall Police Department, the Mayor and Council of Chestertown, the Mayor and Council of Rock Hall, and the Kent County State's Attorney.

Pursuant to the Agreement, the Task Force is staffed by officers from the various parties' agencies. The Agreement provides that the Task Force shall be supervised by a member of the Maryland State Police, and that the State Police shall assign at least one additional full-time officer. The Kent County Sheriff's Office is required to supply two full-time officers.[2] Members of the Task Force continued to be paid by their respective agencies. Their respective agencies also had to supply equipment, e.g., firearms, ammunition, and automobiles. Any necessary narcotics training was to be administered by the Maryland State Police.

### Procedural History

The Shepherds are residents of Delaware. The Shepherds brought suit in the Superior Court against Knapp, the State of Maryland, and Kent County. After discovery was completed, the parties agreed by stipulation that factual issues of liability and damages would be submitted to binding arbitration. Any issues of law would be decided by the assigned judge of the Superior Court.

Motions *in limine* were filed by Kent County, the State of Maryland, and Knapp. The Superior Court rejected Maryland's contention that it had absolute sovereign immunity, pursuant to the Maryland Tort Claims Act, because the Shepherds' litigation had not been filed in a Maryland judicial forum. Nevertheless, the Superior Court did rule

---

**1.** *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) and *Baker v. General Motors Corp.*, ⸺ U.S. ⸺, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998).

**2.** The towns of Rock Hall and Chestertown are required to either supply one full-time officer each, or make an annual monetary contribution at a pre-determined rate.

that it would apply the doctrine of comity, by limiting the liability of Maryland and Knapp to $50,000, as set forth in the Maryland Tort Claims Act. The Superior Court declined, however, to determine whether Knapp was acting as an agent of the State of Maryland or Kent County or both because, in the Superior Court's view, the record created issues of fact as to the right of each or both to control Knapp's actions at the time the accident occurred.

Following a hearing, the arbitrator found that Knapp was negligent in the operation of his motor vehicle at the time of the accident. The arbitrator also found that Knapp's negligence was the proximate cause of the injuries sustained by Shepherd and Cline. The arbitrator made a factual determination that Knapp was acting as an agent and employee of Kent County, and, by admission of the State of Maryland, that Knapp was also acting as an agent of the State of Maryland. The arbitrator also determined that the permanent injuries sustained by Shepherd had a catastrophic impact on his life and he had no realistic hope of returning to his employment with General Motors. The arbitrator awarded Shepherd $425,000 in damages. The arbitrator found that Cline's injuries had also resulted in significant permanent limitations and awarded her $185,000.

Following the arbitration hearing, the Superior Court restated its prior legal rulings and applied them as follows:

1. None of the three defendants, Knapp, Kent County Maryland, or State of Maryland, has absolute immunity from liability for damages in this case.

2. Under principles of comity, the State of Maryland Immunity Statutes do not offend the public policy of Delaware, and should, therefore, be applied in this case, thereby limiting damages payable to Plaintiffs by the State of Maryland and Timothy S. Knapp to $50,000, and damages payable by Kent County, Maryland and Timothy S. Knapp to $200,000.

Final judgments were entered against Knapp, Kent County, and the State of Maryland for those reduced amounts in favor of Shepherd and Cline. Those judgments are being challenged in this Court by all of the parties, for the reasons stated earlier, in their respective appeals and cross-appeals.

### Kent County Sheriff
### Law Enforcement Activity
### Only Maryland Vicariously Liable

The first issue presented is whether Kent County is vicariously liable in this case for Knapp's negligent conduct. That question was addressed in ·a similar context by the United States Supreme Court during the pendency of this appeal.[3] The predicate for the ultimate holding in *McMillian* was a "crucial axiom" of American federalism: "the States have wide authority to set up their state and local governments as they wish." [4]

In *McMillian*, it was recognized that "the importance of counties and the nature of county government have varied historically from region to region, and from State to State." [5] Accordingly, the United States Supreme Court noted that it is "entirely natural" for the role of county sheriffs to vary from State to State.[6] Consequently, in *McMillian*, it was concluded that "there is no inconsistency created by court decisions that declare sheriffs to be county officers in one State, and not in another." [7]

In this appeal, we are guided by two precepts that were identified in the *McMillian* opinion. First, the question is not whether Deputy Sheriff Knapp acts for the State of Maryland or Kent County in "some categorical, 'all or nothing' manner." [8] Thus, we are not seeking to make a characterization of sheriffs or deputy sheriffs from Maryland counties that "will hold true for every type of

**3.** *McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).

**4.** *Id.* 117 S.Ct. at 1741.

**5.** *Id.*

**6.** *Id.* 117 S.Ct. at 1742.

**7.** *Id.*

**8.** *Id.* 117 S.Ct. at 1737.

official action they engage in." [9] The question we address is *only* whether Deputy Sheriff Knapp represents the State of Maryland or Kent County when he acts in a law enforcement capacity? [10]

■ The second precept identified in *McMillian* is that the answer to the first question must be determined by an analysis of the law of Maryland. In *McMillian*, the United States Supreme Court held that "the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's function under relevant state law." [11] In response to the concern "that state and local governments will manipulate the title of local officials in a blatant effort to shield local governments from liability," the United States Supreme Court noted that the state law answer must be found in the "actual functioning of a governmental official" and not "simply labeling." [12] Thus, in the context of determining vicarious liability in the public sector, with regard to the relationship between intrastate governmental entities, the matter is a legal question that must be answered in accordance with the law of each sovereign state. [13]

In accordance with *McMillian*, we have analyzed the law of Maryland with regard of the facts of this case. The common law office of sheriff existed when Maryland was a colonial state and had ancient Anglo–Saxon origins. [14] Since 1776, the elective office of sheriff has been provided for in every Maryland Constitution. [15] In *Rucker v. Harford County*, the highest court in the State of Maryland held unequivocally, as a matter of Maryland law, that county sheriffs and deputy sheriffs who are engaged in law enforcement activities are "officials and/or employees of the State of Maryland," rather than the county. [16]

In *Rucker*, a civilian bystander was struck by a bullet fired during a police chase that involved the Maryland State Police and the Harford County Sheriff's Deputies. The injured bystander filed a lawsuit in the United States District Court for the District of Maryland, alleging common law negligence and a violation of federal rights. The defendants named in the *Rucker* law suit included Harford County, each of the deputy sheriffs involved in the chase, and the Superintendent of the Maryland State Police.

In *Rucker*, the deputy sheriffs moved to dismiss the portion of the complaint seeking damages under federal law on the ground that they were employees or officials of the State of Maryland. Since the issues presented were controlled by Maryland law, the United States District Court of Maryland certified the following question to the Maryland Court of Appeals:

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.* 117 S.Ct. at 1742, 1737.

13. The issue of vicarious liability, pursuant to the doctrine of *respondeat superior*, is ordinarily an issue of fact when the relationship at issue involves private parties. *See Fisher v. Townsends, Inc.*, Del.Supr., 695 A.2d 53 (1997). Nevertheless, the legal relationship established between themselves by the private parties is often the determining factor, if at the critical time, they were conducting themselves in accordance with that legal relationship, e.g., the employer is vicariously liable for the negligent conduct of an employee who is acting within the scope of his or her employment. *Id.*

14. *See McMillian v. Monroe County*, 117 S.Ct. at 1741. *See also Rucker v. Harford County*, Md. Ct.App., 316 Md. 275, 558 A.2d 399, 405 (1989)

and C. Wigan & D. Meston, *Mather on Sheriff and Execution Law* 1–2 (1935); 1 W. Blackstone, *Commentaries on the Laws of England* 328 (1765); 1 W. Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables* 5 (1941).

15. *Rucker v. Harford County*, 558 A.2d at 404. Article IV, Section 44 of the Constitution of Maryland provides "there shall be elected in each county and in Baltimore City one person, resident in said county or City, ... to the office of Sheriff. He shall ... give such bond, exercise such powers and perform such duties as now are or may hereafter be fixed by law."

16. *Rucker v. Harford County*, 558 A.2d at 402. The Maryland Court of Appeals also noted, consistent with the subsequent holding by the United States Supreme Court in *McMillian*, that in another context, a county sheriff or deputy sheriff could be treated as employees of a local government. *Id.* at 406.

Whether the Sheriff or Deputy Sheriffs of Harford County are employees of the State of Maryland or of Harford County? [17]

In response to that certified question the Court of Appeals held:

> as a matter of Maryland law, the Sheriff and Deputy Sheriffs of Harford County are officials and/or employees of the State of Maryland rather than of Harford County. The role of a sheriff as a State constitutional officer whose duties are subject to control by the General Assembly leads us to the conclusion that sheriffs are State rather than local government employees. Because a deputy sheriff, functions as the alter ego of the sheriff and exercises the same authority, we reach the same conclusion with respect to deputy sheriffs. [18]

The holding in *Rucker* came at a time when the Maryland Tort Claims Act ("MTCA") did not specifically include sheriffs or deputy sheriffs under its coverage. In 1990, in an emergency measure passed by the Maryland legislature, the Maryland Torts Claim Act was amended to specifically include a "sheriff or deputy sheriff" as "State personnel." [19] The Maryland Court of Appeals has since relied on *Rucker* and this amendment to the MTCA to conclude that:

> [i]t is clear ... that under Maryland law the Sheriff and deputy sheriffs ... are State employees....
>
> Therefore, to the extent that ... any purported agency of [the] County are named as defendants based on a theory that they are liable as employers for the alleged negligence of the ... County deputy sheriffs, the judgment [of dismissal for those county agencies] in their favor was correct. [20]

■ In *McMillian*, the United States Supreme Court held that the public sector question of vicarious liability between a state

and its political subdivisions is an issue of state law, unless the plaintiff can demonstrate that the titles of local officials have been manipulated in a blatant effort to avoid liability. [21] There is "no evidence of such manipulation here." [22] We have concluded that, under Maryland law, the State of Maryland alone is vicariously responsible for Kent County Deputy Sheriff Knapp's negligent conduct because it occurred during the course of his law enforcement duties, while he was operating a motor vehicle within the State of Delaware. Therefore, the judgments entered against Kent County must be reversed.

### Maryland Tort Claims Act
### Full Faith and Credit Clause Inapplicable

In this case, the State of Maryland admits that it is vicariously liable for the negligent conduct of Knapp while driving within the State of Delaware. The State of Maryland also acknowledges that Knapp's negligence was the proximate cause of the injuries to Cline and to Shepherd. Nevertheless, Maryland and Knapp both contend that they have absolute sovereign immunity from paying *any* monetary damages to either Shepherd or Cline.

The State of Maryland and Knapp argue that the judgments entered against them by the Superior Court should be reversed because the applicable Maryland statute "waives the sovereign immunity of the State of Maryland and its units in a tort action only in the courts of the State of Maryland. Thus, the Full Faith and Credit Clause requires that Delaware apply the statutory law of Maryland." [23] That argument is premised upon the Maryland Torts Claim Act. The condition precedent to the limited waiver of sovereign immunity in that Act is a require-

17. *Rucker v. Harford County*, 558 A.2d at 400.

18. *Id.* at 402.

19. *See State v. Card*, Md. Ct. Spec.App., 104 Md.App. 439, 656 A.2d 400, 402–03 (1995); *Md. Code. Ann.*, St. Gov't. § 12–101(6).

20. *Boyer v. State*, Md. Ct.App., 323 Md. 558, 594 A.2d 121, 128 (1991).

21. *McMillian v. Monroe County*, 117 S.Ct. at 1742.

22. *Id.*

23. Supplemental Reply Brief of Knapp and the State of Maryland, at 2–3 (March 10, 1997) (citation omitted).

ment that the lawsuit be filed within a Maryland forum.[24]

◼ The Full Faith and Credit Clause of the United States Constitution provides that:

Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.[25]

In this appeal, the State of Maryland asserts that the State of Delaware must give Full Faith and Credit to the Maryland Torts Claims Act. In construing the Full Faith and Credit Clause earlier this year, however, the United States Supreme Court reiterated that it has always "... differentiat[ed] the credit owed to laws (legislative measures and common law) and to judgments."[26] With respect to statutory laws, like the Maryland Tort Claims Act, the forum state is not required to give Full Faith and Credit to the statutes of another state when contemplating an issue upon which the forum state is competent to legislate.[27]

Although not cited to this Court, this *exact* understanding of the Full Faith and Credit Clause was set forth in an Opinion of the Attorney General of the State of Maryland that was released only a few months before the present appeal was filed.[28] That Opinion of the Attorney General of Maryland was issued to the Sheriff of Montgomery County in direct response to the question of liability to third parties for conduct outside the State of Maryland, i.e., interstate transportation of prisoners. The Attorney General of Maryland advised the Sheriff of Montgomery County as follows:

If the lawsuit is brought in another state, the sheriff or deputy could not assert [Maryland Tort Claims Act] immunity directly, ... because Maryland law cannot directly govern a suit in another state. However, if the court of the forum state, i.e., the court where the lawsuit is brought, chooses to apply the immunity provisions of the [Maryland Tort Claims Act] under conflict of laws or comity principles, the sheriff or deputy would be immune.[29]

Although the State of Maryland has been represented by a distinguished Delaware attorney in this appeal, the State of Maryland has also been represented by more than one Assistant Attorney General from the Maryland Office of the Attorney General, who have undoubtedly been advising their Delaware counsel about Maryland law. In view of the prior, published Maryland Attorney General Opinion that was issued to the Sheriff of Montgomery County, it is surprising that the State of Maryland would "assert Maryland Tort Claims Act immunity directly" to this Court. That argument is especially surprising because one of the Maryland Assistant Attorneys General who appears on the briefs filed in this Court also appeared on the Attorney General Opinion that was issued to the Sheriff of Montgomery County.

---

**24.** Specifically, that Act states that immunity of the State is waived "in a court of the State." *Md.Code. Ann.*, St. Gov't., § 12–104(a).

**25.** U.S. Const., art. IV, § 1. In carrying out the intent of that provision, Congress enacted the following statute:

The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certifi-

cate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.

**26.** *Baker v. General Motors Corp.*, —— U.S. ——, ——, 118 S.Ct. 657, 663, 139 L.Ed.2d 580 (1998).

**27.** *Id.*

**28.** Md. Op. Att'y Gen., No. 96–002, 1996 WL 98885, at *6 (January 17, 1996).

**29.** *Id.*

Nevertheless, in 1998, the United States Supreme Court again explained that the mandate of the Full Faith and Credit Clause requires states to enforce each other's judgments *but not each other's statutes.*[30] In doing so, it relied upon its 1979 holding in *Nevada v. Hall,*[31] which addressed the very issue presented in this appeal. That case arose out of an automobile accident, within the State of California, between a vehicle occupied by California residents and another vehicle being operated by an employee of The University of Nevada.[32]

For almost two hundred years, it had been assumed that the United States Constitution implicitly prohibited one state from being sued in the courts of another state—just as the Eleventh Amendment explicitly prohibited states from being sued in federal courts. That implicit assumption was based on the theory that interstate immunity was an attribute of state sovereignty that had been reserved to the states in the United States Constitution.[33] In 1979, when it decided *Hall,* the United States Supreme Court held that assumption was unwarranted.[34]

In *Hall,* a Nevada motorist collided with a California resident within the State of California while engaged in official state business and operating a vehicle owned by the State of Nevada.[35] In its defense, Nevada asserted sovereign immunity and also relied upon the Nevada statutory waiver, limiting an award in a tort action against the State of Nevada to $25,000. Nevertheless, the California Superior Court entered judgment on the full amount of the jury verdict, which had awarded the plaintiffs $1,150,000.[36]

The United States Supreme Court acknowledged the validity of California's substantial interest in "providing 'full protection to those who are injured on its highways through the negligence of both residents and nonresidents.'"[37] The Supreme Court made clear "that the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy."[38] The United States Supreme Court held that the State of California was not required to recognize the State of Nevada's sovereign immunity or its statutory limited waiver cap of $25,000.[39] The judgment of the California Superior Court was not disturbed.[40]

■ In *Hall,* the United States Supreme Court held that the recognition of interstate sovereign immunity was not constitutionally mandated by the Full Faith and Credit Clause.[41] In 1993, the Maryland Court of Appeals relied upon *Hall* and held "a Maryland court need not recognize the governmental immunity of another state or of a municipal corporation or political subdivision outside of Maryland."[42] In 1998, the United States reaffirmed the holding of *Hall,* when the issues presented in *Baker* were decided.[43] The argument that the State of Delaware

30. *Baker v. General Motors Corp.,* —— U.S. at ——, 118 S.Ct. at 663.

31. *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).

32. *Id.* 440 U.S. at 411, 99 S.Ct. 1182.

33. *Struebin v. Iowa,* Iowa Supr., 322 N.W.2d 84, 85 (1982) (citing *Paulus v. South Dakota,* N.D.Supr., 58 N.D. 643, 227 N.W. 52 (1929) and *Nathan v. Virginia,* Phila. County C.P., 1 U.S. (1 Dall.) 77, 1 L.Ed. 44 (1781)).

34. *Id.; Nevada·v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).

35. *Nevada v. Hall,* 440 U.S. at 411, 99 S.Ct. 1182.

36. *Id.* at 413, 99 S.Ct. 1182. The California Court of Appeals affirmed the decision and, although the California Supreme Court denied review, the United States Supreme Court granted certiorari. *Id.*

37. *Id.* at 423, 99 S.Ct. 1182.

38. *Id.* at 422, 99 S.Ct. 1182.

39. *Nevada v. Hall,* 440 U.S. at 424, 99 S.Ct. 1182.

40. *Id.* at 427, 99 S.Ct. 1182.

41. *Id.* at 424, 99 S.Ct. 1182.

42. *Hansford v. District of Columbia,* Md. Ct.App., 329 Md. 112, 617 A.2d 1057, 1068 (1993).

43. *Baker v. General Motors Corp.,* —— U.S. at ——, 118·S.Ct. at 663.

must give Full Faith and Credit to the Maryland Torts Claim Act is without merit.

### Comity for Sister State Statute Forum State's Public Policy Controls

The State of Maryland and Knapp have a two-part alternative contention to their unsuccessful Full Faith and Credit Clause argument. They contend that, as a matter of comity, the State of Delaware should either: (1) recognize their assertion of absolute immunity under the Maryland Torts Claims Act, because this litigation was not filed in a Maryland forum; or (2) cap their liability at the $50,000 limit in the Maryland Torts Claims Act.[44] It is interesting to note that when the issue of comity was discussed in the Maryland Attorney General Opinion to the Sheriff of Montgomery County, which was not cited to this Court, a Delaware Supreme Court opinion was relied upon to explain that "[c]omity permits one state to give effect to the laws of a sister state, not out of obligation but out of respect and deference."[45]

The issue of having a forum state recognize the sovereign immunity of a sister state as a matter of comity, was also addressed authoritatively by the United States Supreme Court in 1979, when it decided *Nevada v. Hall:*

> The intimate union of these states, as members of the same great political family; the deep and vital interests which bind them so closely together; should lead us, in the absence of proof to the contrary, to presume a greater degree of comity, and friendship, and kindness towards one another, than we should be authorized to

presume between foreign nations. *And when (as without doubt must occasionally happen) the interest or policy of any state requires it to restrict the rule, it has but to declare its will, and the legal presumption is at once at an end.*[46]

In *Hall,* the United States Supreme Court added that while "wise policy" might dictate recognition of the limitation on immunity, the federal system would not intrude upon a state's decision not to extend recognition on public policy grounds.[47] Notably, the California Supreme Court had stated:

> We have concluded that sister states who engage in activities within California are subject to our laws with respect to those activities and are subject to suit in California courts with respect to those activities. When the sister state enters into activities in this state, it is not exercising sovereign power over the citizens of this state and is not entitled to the benefits of the sovereign immunity doctrine as to those activities unless this state has conferred immunity by law or as a matter of comity.[48]

Following *Hall,* several state supreme courts have addressed the issue of recognizing another state's sovereign immunity for official acts that caused injury in the forum state. The Iowa Supreme Court, for example, held that neither the Full Faith and Credit Clause nor the doctrine of comity required the Iowa courts to dismiss the State of Illinois from a lawsuit filed in Iowa.[49] There, the plaintiff-administrators alleged that the State of Illinois' negligent performance of a contract with Iowa to maintain a certain bridge between the states had been the proximate cause of the deaths at issue in

**44.** *Md.Code Ann.,* St. Gov't. § 12–104. The Maryland General Assembly has subsequently amended the waiver provision in the Maryland Tort Claims Act. This amendment governs any cause of action arising after July 1, 1996. Section 12–104 now provides that "The liability of the State and its units may not exceed $100,000 to a single claimant for injuries arising from a single accident or occurrence." *Md.Code Ann.,* State Gov't § 12–104(a)(2).

**45.** *Columbia Cas. Co. v. Playtex FP, Inc.,* Del. Supr., 584 A.2d 1214, 1218 (1991) (cited in Md. Op. Att'y Gen., No. 96–002, 1996 WL 98885, at *6 (January 17, 1996)).

**46.** *Nevada v. Hall,* 440 U.S. 410, 425–26, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979) (quoting *Bank of Augusta v. Earle,* 38 U.S. (13 Pet.) 519, 10 L.Ed. 274 (1839))(emphasis added).

**47.** *Id.* at 426, 99 S.Ct. 1182.

**48.** *Hall v. Nevada,* Cal.Supr., 8 Cal.3d 522, 105 Cal.Rptr. 355, 503 P.2d 1363, 1364 (1972), *aff'd,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).

**49.** *Struebin v. Iowa,* Iowa Supr., 322 N.W.2d 84, 87 (1982).

the litigation.[50] The State of Illinois argued that it was entitled to have its liability capped at the limitation in the Illinois' statute of $100,000 per plaintiff.[51]

With regard to the Full Faith and Credit Clause, the Iowa Supreme Court rejected the State of Illinois' attempt to confine *Hall* to its facts, noting "[u]nder *Hall*, [Illinois'] policy [of limiting recovery if the action were brought in Illinois] is not of sufficient magnitude to override Iowa's legitimate interest in giving full access and protection in Iowa courts to those injured on Iowa highways."[52] With regard to the issue of recognizing the Illinois statutory limits, as a matter of comity, the Iowa Supreme Court stated: "We believe Iowa's interest in full compensation outweighs Illinois' interest in extending its statutory limitation on recovery to its Iowa torts. Iowa's policy is a legitimate attribute of its own sovereignty."[53]

The Supreme Court of Kansas began from the premise that a sister state's sovereignty extends only to its territorial boundaries and declined to recognize the claim of sovereign immunity asserted by the State of Missouri.[54] In that case, a Kansas resident alleged that the negligent preparation of an arrest warrant in Missouri was the proximate cause of the plaintiff's false arrest in Kansas.[55] The Kansas Supreme Court stated that when a state or any of its political subdivisions acts within the territorial boundaries of another state, "it does not carry with it any of the attributes of sovereignty, and it is subject to the laws of such other state the same as any other proprietor."[56] The majority opinion found a long-recognized public policy in Kan-

sas of compensating its citizens for injuries occurring within the state.[57] It supported this determination by citing both the Kansas long-arm statute and the Kansas Torts Claims Act.[58] The Kansas Supreme Court concluded: "To hold that Missouri could not be sued in Kansas would result in granting greater immunity to our sister state than the immunity which our citizens through the legislature have bestowed upon our state government."[59]

The issues presented in this appeal are identical to the concerns confronted by the highest courts in Iowa, Kansas, and other states.[60] The accident in this case took place within the State of Delaware. The accident victims, Shepherd and Cline, were Delaware residents at the time of the accident, and remain Delaware residents. They brought suit in Delaware courts. The State of Delaware has a legitimate interest in having its residents, who are victims of auto accidents on its highways, compensated for their injuries to the extent permitted by law. Conversely, the sister sovereign State of Maryland has asked the State of Delaware, as a matter of comity, to either completely deny or limit the monetary damages awarded to Shepherd and Cline on the basis of the Maryland Tort Claims Act.

The conflicting interests of the Shepherds in seeking full compensation and the State of Maryland's request for complete or limited relief are diametrically opposed. Since these conflicting requests can not be harmonized, the ultimate question this Court must decide is whether the State of Maryland's request for absolute or limited sovereign immunity

50. *Id.* 322 N.W. at 85.

51. *Id.*

52. *Struebin v. Iowa*, 322 N.W.2d at 86.

53. *Id.* 322 N.W. at 87.

54. *Head v. Platte County*, Kan.Supr., 242 Kan. 442, 749 P.2d 6, 8–9 (1988).

55. *Id.* 749 P.2d at 8.

56. *Id.* (citing *State v. Holcomb*, Kan.Supr., 85 Kan. 178, 116 P. 251 (1911)).

57. *Id.* 749 P.2d at 9.

58. *Id.*

59. *Id.* 749 P.2d at 10.

60. The Supreme Court of South Carolina and the Supreme Court of Nevada reached a similar result but in a different manner. *Mianecki v. Second Jud. Dist. Ct.*, Nev.Supr., 99 Nev. 93, 658 P.2d 422 (1983); *Melton v. Crowder*, S.C.Supr., 317 S.C. 253, 452 S.E.2d 834 (1995). *See also Peterson v. Texas*, Colo. Ct.App., 635 P.2d 241 (1981) (holding that where the injured party is a citizen of the forum state and the injury occurs in the forum state, no immunity will be extended by law or as a matter of comity upon a culpable sister state).

for the torts of its agents within the State of Delaware, as a matter of comity, either offends or coincides with the public policy of Delaware. Accordingly, we must examine the public policy of Delaware, in particular, as that public policy is reflected in the legislative enactments of its elected representatives.

### Delaware's Public Policy Prohibits Comity For Maryland

■ The Delaware Long–Arm Statute provides that "a court may exercise personal jurisdiction over any nonresident ... who in person or through an agent ... [c]auses tortious injury in the State by an act or omission in this State .... "[61] In addition to this general long-arm provision, Delaware law provides:

Any nonresident owner, operator or driver of any motor vehicle, who accepts the privilege extended by law to nonresidents of this State to operate or drive such motor vehicles on the public streets, roads, turnpikes or highways of this State by operating or driving such motor vehicle or by having the same operated or driven ... shall be such acceptance of the privilege be deemed thereby to have appointed and constituted the Secretary of State of this State, his agent for the acceptance of legal process in any civil action against such nonresident owner, operator or driver arising or growing out of any accident or collision occurring within this State in which such motor vehicle is involved.... [62]

This Court has explained the fundamental purpose behind the statute:

[The purpose] is to afford a means of civil redress to persons injured in Delaware as a result of motor vehicle accidents in which one of the vehicles involved is owned by a non-resident of the state. In view of this fundamental purpose, it seems reasonable that the statute be construed, unless the statutory provisions prohibit such a construction, so as to make the remedy available to all persons injured as the result of the negligent operation of a non-Delaware car, which has been driven into Delaware over Delaware highways .... [63]

Thus, "by the mere fact of accepting the privilege of driving a vehicle over Delaware highways, a non-resident thereby agrees to be sued for damages caused by the operation of his vehicle in Delaware." [64]

In construing an earlier Massachusetts statute to the same effect, the United States Supreme Court stated:

Motor vehicles are dangerous machines; and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the state may make and enforce regulations reasonably calculated to promote care on the part of all, residents and nonresident alike, who use its highways. The [Massachusetts long-arm statute] operates to require a nonresident to answer for his conduct in the state where arise causes of action alleged against him, as well as to provide for a claimant a convenient method by which he may sue to enforce his rights.... The state's power to regulate the use of its highways extends to their use by nonresidents as well as by residents.[65]

Accordingly, this Court has recognized that Section 3112 was intended to "avoid the necessity of following a tortfeasor to his [or her] place of domicile in order to obtain redress for his [or her] tort." [66] The provi-

**61.** 10 *Del. C.* § 3104(c)(3).

**62.** 10 *Del. C.* § 3112(a).

**63.** *Kohanovich v. Youree,* Del.Supr., 147 A.2d 655, 657 (1959). *See also Eudaily v. Harmon,* Del.Supr., 420 A.2d 1175 (1980).

**64.** *Kohanovich v. Youree,* 147 A.2d at 657.

**65.** *Hess v. Pawloski,* 274 U.S. 352, 356, 47 S.Ct. 632, 71 L.Ed. 1091 (1927).

**66.** *Beck v. Lund's Fisheries, Inc.,* Del.Supr., 164 A.2d 583, 585 (1960). The Superior Court opinion in *Snyder v. Beam,* Del.Super., 380 A.2d 1374 (1977), construed the term "operator" found in Section 3112(a), in light of *Beck,* to include "an employer who is having a vehicle driven on the roadways of Delaware by his employee even though the employer does not own the vehicle." *Id.* at 1377. In the present case, the State of Maryland, being the statutory employer, would be amenable to jurisdiction as the "principal" under these facts.

sion in the Maryland Tort Claims Act that requires a lawsuit to be filed in a Maryland judicial forum is inconsistent with the public policy of the Delaware Long Arm Statute.

Under Delaware's Tort Claims Act, sovereign immunity is waived by the State of Delaware up to the amount of liability insurance procured by the Insurance Coverage Determination Committee to cover certain loss risks.[67] The Act commands the Committee to "[p]rotect the public from wrongful actions of State officials and employees . . . ."[68] This body has set the policy limits for the negligence of state police officers at $750,000/1,000,000.

This Court has previously concluded that, given the comprehensive nature of the insurance plan, its mandatory language, and the "injustice" it would correct (by partially abrogating the doctrine of sovereign immunity), the General Assembly intended to "enact a viable [insurance] program which would . . . '[p]rotect the public from wrongful actions of State officials and employees.'"[69] If this Court held that the State of Maryland's maximum liability in this case was $50,000, it would result in granting greater sovereign immunity to our sister state than the General Assembly has retained for the State of Delaware.[70] The limitations of liability in the Maryland Tort Claims Act are inconsistent with the limitations on liability in the Delaware Tort Claims Act.

■ The Delaware Long–Arm Statute and the Delaware Tort Claims Act both reflect a coherent and comprehensive public policy which prohibits a Delaware Court from recognizing, as a matter of comity, either the absolute or the limited sovereign immunity arguments that have been asserted by Knapp and the State of Maryland. Therefore, we have concluded that the public policy underlying the Delaware Long–Arm Statute and the Delaware Tort Claims Act favors permitting Shepherd and Cline to recover the full amount of monetary damages awarded to each of them. The Superior Court should have entered judgments in favor of Shepherd and Cline in accordance with the damage awards recommended by the arbitrator.

### Full Faith and Credit
### Delaware Judgment in Maryland Courts

The State of Maryland has suggested to this Court that it may not recognize the validity of any monetary judgment entered against it or Knapp by the courts of Delaware. It will argue that such a Delaware judgment should not be enforced by any court in the State of Maryland. The State of Maryland's suggested challenge to the validity of the monetary judgments that will be entered by the Delaware Superior Court, upon remand from this Court, raises the specter of adverse implications regarding the effective administration of justice. Accordingly, we have examined the history, purpose, and interpretation of the Full Faith and Credit Clause.[71]

The issue of one state affording full faith and credit to the judgment of another state was considered during the nascency of our Nation. On November 10, 1777, the Continental Congress appointed a committee to consider "sundry provisions" that had been proposed for the Articles of Confederation, including a full faith and credit clause.[72] When the Articles of Confederation were enacted, there was a *basic* requirement for full faith credit, but, a *specific* "provision that an action of debt may lie in the court of any state to recover on the judgment of another was rejected."[73]

---

**67.** *See* 18 *Del. C.* §§ 6502 and 6511.

**68.** 18 *Del. C.* § 6503(2).

**69.** *Pajewski v. Perry*, Del.Supr., 363 A.2d 429, 435 (1976).

**70.** *Accord Head v. Platte County*, Kan.Supr., 242 Kan. 442, 749 P.2d 6, 10 (1988).

**71.** *See* Robert H. Jackson, *Full Faith and Credit—The Lawyer's Clause of the Constitution*, 45 Colum. L.Rev. 1 (1945) and Max Radin, *The Authenticated Full Faith and Credit Clause: Its History*, 39 Ill. L.Rev. 1 (1944).

**72.** The members of that committee were Richard Law, Henry Lee, and James Duane. 9 *Journals of the Constitutional Congress* 885 (1907).

**73.** Robert H. Jackson, *Full Faith and Credit—The Lawyer's Clause of the Constitution*, 45 Colum. L.Rev. 1, 3–4 (1945).

The Articles of Confederation proved to be an unsuccessful form of government because each state remained substantially sovereign and often exercised those sovereign powers in a manner that adversely affected the commercial interests of other states including, but not limited to, interstate debt collections.[74] Given the position suggested by the State of Maryland in this appeal, it is somewhat ironic historically that John Dickinson of Delaware was elected to preside at the Annapolis Convention in Maryland, which was called in 1786 to address the practices between states that were "opposed to the great principles and Spirit of the Union."[75]

Upon the recommendation of the Annapolis Convention, Congress passed a resolution calling upon all of the states to send delegates to Philadelphia for the purpose of revising the Articles of Confederation.[76] After the Constitutional Convention convened in 1787, the Framers adopted "a plan not merely to amend the Articles of Confederation but to create an entirely new National Government."[77] What emerged from the Philadelphia Convention was a plan for a new federation, based upon a strong central government, i.e., the United States Constitution.

The Full Faith and Credit Clause that ultimately appeared in the United States Constitution was described in The Federalist as "an evident and valuable improvement on the clause relating to this subject in the Articles of Confederation" and "may be rendered a very convenient instrument of justice, and be particularly beneficial on the borders of contiguous states" e.g., Delaware and Maryland.[78] The United States Supreme Court has characterized "[t]he Full Faith and Credit Clause [as] one of the provisions incorporated into the Constitution by its framers for the purpose of transforming an aggregation of independent, sovereign States into a nation."[79]

The Full Faith and Credit Clause was first construed by the United States Supreme Court in 1813.[80] In another historic coincidence, we note that the attorney challenging a broad reading of the Full Faith and Credit Clause in that case was Francis Scott Key, who wrote our national Anthem the following year from a ship in the Baltimore, Maryland harbor.[81] Key contended that "merely to receive in evidence a judgment from another state to be weighed with other evidence gave it all the faith and credit required."[82] In responding to that argument, the opinion, authored by Justice Joseph Story, stated that the interpretation which had been advocated by Francis Scott Key would render the Full Faith and Credit Clause "utterly unimportant and illusory."[83] The United States Su-

74. See *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 117 S.Ct. 1590, 1624–25, 137 L.Ed.2d 852 (1997) (Thomas, J. dissenting).

75. *Id.* 117 S.Ct. at 1624 (citation omitted).

76. 1 J. Thomas Scharf, *History of Delaware* 268 (1888).

77. *Wesberry v. Sanders*, 376 U.S. 1, 10, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964). *See* John P. Roche, *Constitutional Convention of 1787, in* 1 *Encyclopedia of the American Constitution* 360 (Leonard W. Levy et al. eds., 1986).

78. *The Federalist* No. 42, at 287 (James Madison)(Jacob E. Cooke ed., 1961). The entire context of that passage is as follows:

   The power of prescribing by general laws the manner in which the public acts, records and judicial proceedings of each State shall be proved, and the effect they shall have in other States, is an evident and valuable improvement on the clause relating to this subject in the Articles of Confederation. The meaning of the latter is extremely indeterminate; and can be of little importance under any interpretation which it will bear. The power here established, may be rendered a very convenient instrument of justice, and be particularly beneficial on the borders of contiguous States, where the effects liable to justice, may be suddenly and secretly translated in any stage of the process, within a foreign jurisdiction. *Id.*

79. *Sherrer v. Sherrer*, 334 U.S. 343, 355 (1948).

80. *Mills v. Duryee*, 11 U.S. (7 Cranch) 481, 3 L.Ed. 411 (1813).

81. Robert H. Jackson, *Full Faith and Credit—The Lawyer's Clause of the Constitution*, 45 Colum. L.Rev. 1, 7 (1945).

82. *Id.*

83. *Mills v. Duryee*, 11 U.S. (7 Cranch) 481, 3 L.Ed. 411 (1813).

preme Court then held that a judgment which was conclusive in the state where it was rendered must be received as conclusive by every other state.[84]

Ever since that initial construction of the Full Faith and Credit Clause in 1813, "the full faith and credit obligation is exacting," when applied to state judgments:

> A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land. For claim and issue preclusion (res judicata) purposes, in other words, the judgment of the rendering State gains nationwide force.[85]

In 1998, the United States Supreme Court responded directly to the argument that there was "a ubiquitous 'public policy exception' permitting one State to resist recognition of another State's judgment."[86] That argument was described as a misreading of "our precedent" because "our decisions support no roving 'public policy exception' to the full faith and credit due judgments."[87] The United States Supreme Court concluded that it was "aware of [no] considerations of local policy or law which could rightly be deemed to impair the force and effect which the full faith and credit clause and the Act of Congress require to be given to [a money] judgment outside the state of its rendition."[88]

The United States Supreme Court has concluded that the express purpose behind the Full Faith and Credit Clause

> was to alter the status of the several states as independent foreign sovereignties, each

free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.[89]

The highest court in the State of Maryland has consistently demonstrated its proper understanding of the United States Supreme Court's interpretation of the Full Faith and Credit Clause, with regard to the enforcement of *judgments* from another state:

> If the judgment has been rendered by a court of competent jurisdiction, the full faith and credit clause of the Federal Constitution precludes any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles involved, and the judgment is conclusive as to all questions in controversy and all defenses which might have been interposed with proper diligence.[90]

As the United States Supreme Court noted once again this year, the Full Faith and Credit Clause "ordered submission ... even to hostile policies reflected in the judgment of another State, because the practical operation of the federal system, which the Constitution designed, demanded it."[91] The State of Maryland's suggestion that the judgments which will be entered against it and Knapp by the Delaware Superior Court are unenforceable in the courts of Maryland, appears to be completely contrary to the history, purpose, and well-established interpretation

---

**84.** *Id.*

**85.** *Baker v. General Motors Corp.,* —— U.S. ——, ——–——, 118 S.Ct. 657, 663–64, 139 L.Ed.2d 580 (1998). *See also Imperial Hotel, Inc. v. Bell Atlantic Tri–Con Leasing Corp.,* Md. Ct. Spec. App., 91 Md.App. 266, 603 A.2d 1371, 1373 (1992).

**86.** *Baker v. General Motors Corp.,* —— U.S. at ——, 118 S.Ct. at 664.

**87.** *Id.* (citing *Fauntleroy v. Lum,* 210 U.S. 230, 237, 28 S.Ct. 641, 52 L.Ed. 1039 (1908) (judgment of Missouri court entitled to full faith and credit in Mississippi even if Missouri judgment rested on a misapprehension of Mississippi law)).

**88.** *Id.* 118 S.Ct. at 664 (quoting *Magnolia Petroleum Co. v. Hunt,* 320 U.S. 430, 438, 64 S.Ct. 208, 88 L.Ed. 149 (1943)).

**89.** *Id.* 118 S.Ct. at 663 (quoting *Milwaukee County v. M.E. White Co.,* 296 U.S. 268, 277, 56 S.Ct. 229, 80 L.Ed. 220 (1935)).

**90.** *Picking v. Local Loan Co.,* Md. Ct.App., 185 Md. 253, 44 A.2d 462, 468 (1945) (quoting *Coane v. Girard Trust Co.,* Md. Ct.App., 182 Md. 577, 35 A.2d 449, 451 (1944)).

**91.** *Baker v. General Motors Corp.,* —— U.S. at ——, 118 S.Ct. at 664 (quoting *Estin v. Estin,* 334 U.S. 541, 546, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948)).

of the Full Faith and Credit Clause, including the most recent pronouncement by the United States Supreme Court in *Baker* earlier this year.[92]

### *Conclusion*

The judgments of the Superior Court are reversed. The Superior Court is directed to enter judgment in favor of Kent County and against Shepherd and Cline. The Superior Court is directed to enter judgment in favor of Shepherd for $425,000, plus interest, against the State of Maryland and Knapp. The Superior Court is directed to enter judgment in favor of Cline for $185,000, plus interest, against the State of Maryland and Knapp. This matter is remanded for further proceedings in accordance with this opinion.

---

**92.** *Baker v. General Motors Corp.,* — U.S. —, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998).