Dear Michael J. Travieso, Esquire
You have requested our opinion concerning participation by the Office of People's Counsel in an independent system operator ("ISO") that has been approved by federal regulatory authorities as a neutral facilitator of the regional wholesale electricity market that serves most of Maryland. Specifically, you have requested our advice as to whether the Office of People's Counsel may become an "ex officio member" of the ISO, which is structured as a limited liability company under Delaware law, and whether such membership would subject the State to "an unacceptable risk of liability."
In our opinion, the Office of People's Counsel may participate as an ex officio member of the ISO if the operating agreement of the ISO is amended, as currently proposed, to exempt state consumer advocates from any liability under the agreement other than a $500 membership fee.
 I Office of People's Counsel
The Office of People's Counsel was created by the General Assembly in 1922 to represent the public interest before the Public Service Commission ("Commission").[1] Chapter 29, § 1, Part XIII, Laws of Maryland 1922. While subsequent amendments and recodifications of that law have expanded the powers and duties of the Office, it remains the public advocate of residential and non-commercial users of utility services. See Chapter 441, Laws of Maryland 1955, codified at former Article 78, §§ 13-14, now codified as amended at Annotated Code of Maryland, Public Utility Companies Article ("PUC"), § 2-101 et seq.; see generally Public Service Commission v. People's Counsel, 309 Md. 1,6-10, 522 A.2d 369 (1987).
With respect to electric service, the Office of People's Counsel is to evaluate all matters pending before the Commission to determine if residential consumers are affected.
PUC § 2-204(a)(1). When those interests are at stake, the Office of People's Counsel may participate in proceedings before the Commission, as well as in appeals of Commission decisions in the State courts. PUC § 2-204(a)(2). When necessary to protect the interests of residential consumers, the Office of People's Counsel may conduct its own investigation or request the Commission to initiate a proceeding. PUC § 2-204(a)(3).
Most pertinent to your inquiry, the Office of People's Counsel is also authorized to appear before other State and federal regulatory agencies when the Office determines that the interests of residential consumers in Maryland could be affected by agency proceedings. PUC § 2-205(b). Among the federal agencies before which the Office of People's Counsel may appear is the Federal Energy Regulatory Commission ("FERC").
 II Proposed Membership in Independent System Operator
A. The Wholesale Market for Electricity
Residential consumers in Maryland obtain electric power from suppliers who generate the power themselves or purchase it in a wholesale market.[2]
Wholesale markets for electric power are organized on a regional basis. Participants in the wholesale market include entities that generate, transmit, or distribute electric power. In the electric power industry, "transmission" generally refers to the use of wires to carry electricity over long distances at very high voltages. "Distribution" generally refers to the use of wires to carry electricity within the service territory of a single utility at lower voltages.
FERC regulates sales of transmission service and wholesale markets for electric power. The operation and regulation of the wholesale market affects the prices paid and service received by end users, such as residential consumers. For that reason, the Office of People's Counsel participates in proceedings before FERC concerning the wholesale markets serving Maryland.
B.Independent System Operators
Participants in certain wholesale markets have developed the concept of an "independent system operator" ("ISO") to provide transmission service, operate the wholesale market, and monitor market conduct. By definition, an ISO is an entity independent of any particular market participant, although typically the various entities involved in the particular market participate in the governance of the ISO. Because an ISO is considered a public utility under FERC's jurisdiction, its operating standards and procedures are subject to approval by FERC. FERC Order No. 888 (April 24, 1996) ("1996 FERC Order") at pp. 279-80.
FERC has encouraged the formation of ISOs as neutral facilitators of regional markets and has set forth principles for the formation and governance of ISOs. 1996 FERC Order at pp. 279-86. Among other things,[3]
the agency requires that all ISOs have a "stakeholder process" that "includes fair representation of all types of users of the system" to "ensure that the ISO formulates policies, operates the system, and resolves disputes in a fair and non-discriminatory manner." Id. at p. 280. To avoid unnecessary litigation before FERC, the agency also encourages each ISO to create an alternative dispute resolution process to resolve technical, financial, and other issues among stakeholders. Id. at p. 286.[4]
C. PJM LLC
In response to the 1996 FERC Order, major electric utilities serving Maryland, together with other regional utilities, requested that FERC designate a Pennsylvania-New Jersey-Maryland ISO to operate the regional wholesale market. FERC ultimately approved the creation of the ISO, which is now known as PJM Interconnection L.L.C. ("PJM LLC"). 81 FERC 61, 257 (November 25, 1997).[5] PJM LLC controls the electricity transmission system, and administers and monitors the wholesale electricity market, for a region that covers most of Maryland.[6] According to PJM LLC, it operates the largest wholesale electricity market in the world. www.pjm.com/default.html (July 26, 2001).
PJM LLC is a non-profit entity organized as a limited liability company under Delaware law. As a limited liability company, PJM LLC has members rather than shareholders. The members of PJM LLC are participants in the wholesale electricity market in the region. In a recent filing in federal court, PJM LLC described the interests of its members in the limited liability company:
 The PJM members do not purchase their interests or otherwise provide capital to obtain their interests. Rather, the PJM members' interests are determined pursuant to a formula that considers various attributes of the member, and the interests are used only for the limited purposes of determining the amount of working capital contribution for which a member may be responsible in the event financing cannot be obtained, apportioning a member's assessment in the light of another member's default, and for dividing assets upon liquidation.
Disclosure Statement of PJM Interconnection, L.L.C. filed in Public Service Electric Gas Co. v. FERC, No. 00-1459 (D.C. Cir. December 21, 2000).
The rights and responsibilities of the members of the ISO are set forth in the Amended and Restated Operating Agreement of PJM Interconnection, L.L.C. (June 26, 2001) ("PJM LLC Operating Agreement"). Any changes to the operating agreement must be approved by FERC before they become effective. Under the PJM LLC Operating Agreement, members may not take part in the management of the ISO. Rather, through a Members Committee established under the operating agreement, they elect an independent Board of Managers ("PJM Board") comprised of individuals who do not have ties to any participant in the electricity industry. The PJM Board appoints a president and other officers to direct and manage the ISO's day-to-day operations. The Members Committee advises the PJM Board and has the power to amend the PJM-LLC Operating Agreement subject to the approval of FERC.
The Members Committee of PJM LLC is thus the vehicle by which stakeholders affected by the wholesale electricity market have a voice in the operation of the ISO. The Members Committee consists of five "sectors," which have equal votes in the committee: Generation Owners, Transmission Owners, Distribution Utilities, Other Suppliers, and End-Use Customers. PJM LLC Operating Agreement, § 8.1.1. Residential customers are considered stakeholders in the End-Use Customer Sector, but are not currently represented on the Members Committee.
D. State Consumer Advocate Offices as Members of PJM LLC
1. Amendment of PJM LLC Operating Agreement (May 2001)
In December 2000, the PJM Board adopted a resolution that proposed amendment of the PJM LLC Operating Agreement to facilitate participation in the Members Committee by state consumer advocates, such as the Office of People's Counsel. The board's resolution noted that certain provisions of the operating agreement were perceived as barriers to membership — in particular, a $5,000 annual membership fee and a provision requiring members to cross-indemnify each other. In response to this resolution, the operating agreement was amended effective May 2001.
Pursuant to those amendments, PJM LLC currently offers state consumer advocates two options for participating in the ISO. First, a state consumer advocate office may participate as an ex officio, nonvoting, member of the Members Committee. PJM LLC Operating Agreement, § 8.2.3(a). The same type of membership is also available to FERC and to other federal and state regulatory commissions.[7] Alternatively, a state consumer advocate office may become a voting member of the End-Use Customer Sector of the Members Committee. Id.[8] Under the amended agreement, the membership fee is reduced to $500 for state consumer advocates. PJM LLC Operating Agreement, Schedule 3.
The amended PJM LLC Operating Agreement also contains special provisions limiting the rights and liability of a state consumer advocate office that becomes a member of the ISO. In particular, the operating agreement declares that "[a] State consumer advocate shall have no liability under the Agreement, other than the annual fee required by schedule 3, to the extent such liability arises solely by virtue of its participation in the Members Committee." PJM LLC Operating Agreement, § 8.2.3 (emphasis added).
In addition, the amended operating agreement authorizes the PJM Board to waive, with respect to state consumer advocates, certain financial obligations that the agreement imposes generally on PJM LLC members. In particular, the operating agreement requires that members make contributions of working capital and indemnify and hold harmless other members in certain circumstances. PJM LLC Operating Agreement, §§ 5.1(b), 16.1. Under the amended agreement, the PJM Board may waive those obligations and others imposed by the operating agreement, if the board determines that the state law prohibits a state consumer advocate from assuming those obligations or that application of those provisions "effectively prohibit participation" by the state consumer advocate. Id., § 17.3. At the same time, state consumer advocate members themselves would not be entitled to indemnification under the operating agreement from other members of the ISO. Id., § 8.2.3(a).[9]
2. Proposed Additional Amendments
The PJM Board currently has under consideration a further amendment of the operating agreement to facilitate participation by state consumer advocate offices. Under the proposed amendment, the two types of membership for state consumer advocates would be combined into one. Instead of having a choice between ex officio nonvoting membership and voting membership, a state consumer advocate would become an ex officio voting member of the End-User Sector of the Members Committee. Proposed Amendment of § 8.2.3 of PJM LLC Operating Agreement.
The proposed amendment would also clarify that such members would not incur liability for working capital, indemnification, or other financial obligations under the operating agreement, apart from the membership fee. In particular, as proposed, the operating agreement would now simply provide that "[a]s an ex officio member, a State Consumer Advocate shall have no liability under this agreement [other than the annual fee]." Proposed Amendment of § 8.2.3 of PJM LLC Operating Agreement.[10]
At the same time, the provision that now authorizes the PJM Board to waive certain obligations imposed by the operating agreement with respect to state consumer advocates would be eliminated. Proposed Amendment of § 17.3 of PJM LLC Operating Agreement. Presumably, the waiver provision would become unnecessary because of the blanket exemption from liability for state consumer advocates in the proposed revision of § 8.2.3 of the operating agreement.
 III Analysis
A. Authorization
You have asked our opinion whether the Office of People's Counsel may, consistent with Maryland law, become an ex officio voting member of PJM LLC, as contemplated by the proposed amendment of the operating agreement. You state that you and other state consumer advocate offices believe that residential consumers have significant interests at stake in the decisions made by the regional ISO.
As noted above, the Office of People's Counsel is authorized to appear before "any federal or State unit" to protect the interests of Maryland consumers. PUC § 2-205(b). Clearly, FERC is among the federal agencies before which the Office of People's Counsel is to advocate on behalf of Maryland consumers.[11] FERC has approved the formation of ISOs, has encouraged the participation of state consumer advocates in ISOs, and has accepted PJM-LLC as the ISO that governs the wholesale market serving most of Maryland. Many issues concerning the operation of the regional wholesale electric power market that would have been the subject of FERC proceedings will now first be decided, with FERC's imprimatur, within PJM LLC.[12] Those decisions will affect the transmission rates for electricity ultimately delivered to Maryland consumers, the wholesale market that governs the supply of that electric power, and the safety and reliability of electric service. Thus, participation at the ISO level may be key to effective representation of a party's interest.
In our view, you may reasonably conclude that the Office of People's Counsel must participate in the ISO to carry out its statutory duty to effectively represent the interests of Maryland residential consumers of electric power. Whether the Office of People's Counsel may participate in the ISO by becoming an "ex officio member" of PJM LLC under the terms of the proposed amendment of the ISO's operating agreement depends on whether such membership would somehow prevent the Office from carrying out its statutory function or require the Office to assume obligations contrary to State law.[13]
B. Potential Restrictions on Member Activities
The Office of People's Counsel could not enter into an agreement in which it undertook fiduciary duties to the ISO or to the other members of the ISO to the detriment of its statutory duty to represent the interests of residential consumers. For example, if the PJM LLC Operating Agreement were to bind its members to support decisions of the ISO regarding the wholesale market, such an undertaking would compromise the ability of the Office of People's Counsel to discharge its statutory duty to represent the interests of Maryland residential consumers. However, nothing in the materials that you provided for our review appears to forbid the Office of People's Counsel from taking any position before FERC, or in any other judicial or administrative forum, on behalf of residential consumers. Indeed, the PJM LLC Operating Agreement explicitly preserves the right of any member "to petition FERC to modify any provision of this Agreement or any Schedule or practice hereunder that the petitioning Member believes to be unjust, unreasonable, or unduly discriminatory. . . ." PJM LLC Operating Agreement, § 11.5(a). Thus, as we understand the terms of the operating agreement, the Office of People's Counsel would retain its ability to challenge a decision of the ISO when it believes that the decision is contrary to the interests of Maryland residential consumers.
C. Liability of Office of People's Counsel as LLC Member
You have asked whether, in joining PJM LLC as an ex officio voting member, the Office of People's Counsel would be incurring "an unacceptable risk of liability" on the part of the State. You have not identified any potential liability of particular concern. Sovereign immunity protects State units and instrumentalities from liability, except to the extent that the General Assembly has waived that defense. We thus review the application of that doctrine to the Office of People's Counsel, the law that governs attribution of liability to members of limited liability companies, and the extent to which membership in PJM LLC under the proposed amended operating agreement might effect a waiver of sovereign immunity.
1. Sovereign Immunity
The doctrine of sovereign immunity precludes suit against State entities absent the State's consent. ARA Health Services, Inc. v. Department of Public Safety and Correctional Services, 344 Md. 85,91-92, 685 A.2d 435 (1996). Under the doctrine, State agencies cannot be sued unless the General Assembly has authorized suit and enabled the agency to obtain the funds to satisfy a judgment. Condon v. State,332 Md. 481, 492, 632 A.2d 753 (1993). The application of the doctrine in a particular case depends on: (1) whether the entity asserting immunity qualifies for its protection; and (2) whether the General Assembly has waived immunity, either directly or by necessary implication. ARA Health Services, 344 Md. at 92.
There is no question that the Office of People's Counsel is a unit of State government protected by the doctrine of sovereign immunity. The Office was established by the General Assembly and is governed by statute. The head of the Office is appointed by the Governor, with the advice and consent of the Senate, and serves at the pleasure of the Governor. PUC § 2-202. The Office is financed by appropriations in the State budget and staffed by State employees. PUC § 2-203(a). It is thus a unit of State government. See, e.g., Katz v. Washington Suburban Sanitary Commission, 284 Md. 503, 397 A.2d 1027 (1979) (regional sanitary commission established by State law was State agency protected by sovereign immunity); Central Collection Unit v. DLD Associates Limited Partnership, 112 Md. App. 502, 507-12, 685 A.2d 873 (1996) (analyzing applicability of sovereign immunity to Injured Workers' Insurance Fund). Nothing in the statute establishing the Office of People's Counsel demonstrates any intent by the Legislature to waive immunity generally as to the Office. Thus, the doctrine shields the Office of People's Counsel unless there is a legislative waiver of sovereign immunity that pertains to a particular transaction or event.
The General Assembly has enacted limited waivers of sovereign immunity as to tort and contract actions. Under the Maryland Tort Claims Act, the State has waived its immunity in certain tort actions to the extent that an agency is covered by a program of insurance. See Annotated Code of Maryland, State Government Article ("SG"), § 12-101 et seq.
The General Assembly has also partially waived the defense of sovereign immunity in contract actions "based on a written contract that an official or employee executed for the State or one of its units while the official or employee was acting within the scope of the authority of the official or employee." SG § 12-201(a). However, a State official who exceeds his or her actual authority in entering into a contract does not waive the State's sovereign immunity. ARA Health Services,344 Md. at 95. There are also procedural and substantive limitations to this waiver. SG § 12-202 (time limits on filing contract claim); 68 Opinions of the Attorney General 382 (1983) (General Assembly retains authority to strike from State budget appropriation designated for payment of judgment in contract action).
A member of a limited liability company enters into an agreement or contract with the other members of the entity. Accordingly, the extent to which ex officio voting membership in PJM LLC would expose the State to significant liability would depend on the extent to which the Office of People's Counsel contractually obligated the State within the waiver of SG § 12-201. The analysis of this issue requires consideration of both the nature of a limited liability company like PJM LLC and the specific undertakings of members set out in the PJM LLC Operating Agreement.
2. Limited Liability Companies
PJM LLC is organized as a limited liability company under Delaware law. In general, a limited liability company is a form of business organization that has characteristics of both a partnership and a corporation. It may be treated as a partnership for federal tax purposes, and, like a partnership, allows flexibility in organizing and managing the entity.[14] However, unlike a general partnership, it offers its members the same shield of limited liability enjoyed by shareholders in a corporation. See 84 Opinions of the Attorney General ___ (1999) [Opinion No. 99-015 (October 12, 1999)], slip op. at pp. 2-3 
n. 1.
Delaware enacted its limited liability company statute in 1992 and has amended it on several occasions since then. See 6 Del. Code § 18-101
et seq. ("Delaware LLC Act"). The Supreme Court of Delaware has described the Delaware LLC Act as "an attractive vehicle to facilitate business relationships and transactions . . . designed to achieve what is seemingly a simple concept — to permit persons or entities ("members") to join together in an environment of private ordering and operate the enterprise under the LLC agreement with tax benefits akin to a partnership and limited liability akin to the corporate form." Elf Atochem North America, Inc. v. Jaffari and Malek, LLC, 727 A.2d 286, 287 (Del. 1999). See also Great Lakes Chemical Corp. v. Monsanto Co.,96 F. Supp.2d 376, 383 (D.Del. 2000) (describing general characteristics of LLCs formed under Delaware law).
As with many LLC statutes, the Delaware LLC Act is to be liberally construed. Delaware LLC Act § 18-1101(a). The Act is intended to allow members of an LLC maximum flexibility to design an entity suitable to their purposes. In particular, the Delaware legislature provided:
 It is the policy of [the Delaware LLC Act] to give maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements.
Delaware LLC Act § 18-1101(b). See also Great Lakes Chemical Corp.,96 F. Supp.2d at 391-92 (Delaware LLC Act affords members "substantial flexibility" in determining character of LLC); Elf Atochem,727 A.2d at 290 (Delaware LLC Act is "flexible statute" that permits members "to engage in private ordering with substantial freedom of contract"). In particular, the duties and liabilities of an LLC member to the LLC or to other members "may be expanded or restricted by provisions in a limited liability company agreement." Delaware LLC Act § 18-1101(c)(2).[15]
Under Delaware law, an LLC is created by the filing of a certificate of formation with the Delaware Secretary of State. Delaware LLC Act § 18-201. However, the Act contemplates that the details of the agreement among the members, including their respective rights and responsibilities, will be spelled out in the LLC's operating agreement. Id. § 18-201(d). See Elf Atochem, 727 A.2d at 288. "The basic approach of [the Delaware LLC Act] is to provide members with broad discretion in drafting the [operating agreement] and to furnish default provisions when the members' agreement is silent." Id. at 291. An operating agreement may establish different "series" of members or interests in the LLC. Delaware LLC Act § 18-215(a). Each series may have "separate rights, powers or duties with respect to specified property or obligations [of the LLC]. . . ." Id.
Because an LLC is designed to offer the same protection from liability as a corporation, limited liability company statutes generally provide that liabilities of an LLC, whether in tort or contract, are not attributed to the members of the LLC. The Delaware LLC Act explicitly precludes attribution of the entity's liabilities to its members, but permits members to assume such liabilities by agreement. The statute provides:
 (a) Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.
 (b) Notwithstanding the provisions of subsection (a) of this section, under a limited liability company agreement or under another agreement, a member or manager may agree to be obligated personally for any or all of the debts, obligations and liabilities of the limited liability company.
Delaware LLC Act § 18-303; see also § 18-215(c) (member of an LLC "may agree to be obligated personally for any or all of the debts, obligations and liabilities of one or more series" of the LLC). Thus, pursuant to Delaware law, a member of a limited liability company is not liable for the torts or other actions of the LLC solely by virtue of membership in the LLC, unless the member agrees to assume such liabilities.
Two recent surveys of the case law concerning limited liability companies concluded that the promise of limited liability for members of LLCs has largely been enforced by the courts. Murdock, Limited Liability Companies in the Decade of the 1990s: Legislative and Case Law Developments and Their Implications for the Future, 56 Bus. Law. 499, 503 (2001) ("courts now recognize that the LLC form of organization provides insulation from liability for members of LLCs"); Note, Limited Liability Companies (LLC): Is the LLC Liability Shield Holding Up Under Judicial Scrutiny?, 35 New Eng. L.Rev. 177, 180-81 (2000) ("the cases to date show that the courts will apply the [LLC] statutes to hold that if the LLC members comply with the statutory requirements, the LLC will . . . protect the LLC member as designed by its state legislature").[16]
Thus, membership in a limited liability company does not itself subject the member to the liabilities of the LLC apart from whatever liability the member has agreed to assume in the LLC operating agreement.
3. Liability under the PJM LLC Operating Agreement
The authority of the Office of People's Counsel to obligate the State by entering into agreements such as the PJM LLC Operating Agreement is constrained by State law. For example, the Office of People's Counsel cannot obligate State funds without an appropriation by the General Assembly. Maryland Constitution, Article III, § 32. Nor can the Office agree to an indemnity clause that might subject the State to substantial liability, unless there is a defined source of funds to pay for the potential liability. See 79 Opinions of the Attorney General ___ (1994) [Opinion No. 94-021 (April 13, 1994), slip op. at p. 3; 71 Opinions of the Attorney General 274 (1986).
Members of PJM LLC could incur financial liability under the PJM LLC Operating Agreement in several ways. In particular, members agree to "share in the costs of committee activities and investigations including costs of consultants, computer time, and other appropriate items . . . and such other expenses as are approved for payment by the PJM Board." PJM-LLC Operating Agreement, § 11.2.1(d). The members also agree to contribute funds according to a formula for working capital for the LLC, if required to do so by the PJM Board. PJM LLC Operating Agreement, § 5.1(b). In addition, members agree to indemnify and hold each other harmless from certain liabilities that may arise in connection with a member's performance of its obligations under the operating agreement of the LLC. PJM LLC Operating Agreement, § 16.1.[17] If the Office of People's Counsel were to agree to such undertakings, it would likely exceed its authority under State law.
However, under the proposed amendment of the PJM LLC Operating Agreement, state consumer advocates would be absolved of any liability under the agreement apart from the $500 annual membership fee. Proposed Amendment of § 8.2.3 of PJM LLC Operating Agreement. Thus, the capital contribution, indemnification, and other financial undertakings would be eliminated for ex officio members such as the Office of People's Counsel. This blanket limitation of liability for certain prospective members of the LLC appears consistent with the law governing Delaware limited liability companies, as well as the general policy of freedom of contract that underlies that Act. See Delaware LLC Act § 18-1101(c).
Finally, we note that the PJM-LLC Operating Agreement provides that "construction, enforcement, and interpretation" of the agreement is to be governed by the laws of Delaware and the Federal Power Act. PJM LLC Operating Agreement, § 4.2. While the Office of People's Counsel may not be protected by sovereign immunity in an action brought in a Delaware court,[18] nothing in the operating agreement requires that actions to enforce the agreement be brought in Delaware or that members subject themselves to the jurisdiction of Delaware courts.
Thus, the PJM LLC Operating Agreement, if amended as proposed, does not impose significant liability on a state consumer advocate office that becomes an ex officio member of the ISO.[19]
 IV Conclusion
In our opinion, the Office of People's Counsel may, consistent with its legislative authorization to represent the interests of residential consumers before State and federal regulatory agencies, participate as an ex officio member of an ISO that operates and oversees a wholesale electricity market that supplies Maryland consumers. Based upon our review of the agreements and proposed amendments that you provided, we do not believe that ex officio membership on those terms would subject the State to significant liability.
 J. Joseph Curran, Jr. Attorney General
 Robert N. McDonald Chief Counsel Opinions Advice
[1] During the decade prior to the formal creation of the office, the function was performed by the Assistant General Counsel to the Public Service Commission, whom the General Counsel informally referred to as the "People's Counsel." See Bosley v. Dorsey, 191 Md. 229, 234-35,60 A.2d 691 (1948).
[2] The retail market has been significantly deregulated in recent years. See Chapters 3, 4, Laws of Maryland 1999. Instead of purchasing electric power from a monopoly utility, many Maryland consumers now have a choice of Commission-licensed electricity suppliers, who distribute electric power through the local utility. See PUC § 7-510.
[3] For example, FERC also requires that an ISO exercise control over the operation of interconnected transmission facilities in its region, charge non-discriminatory rates, and otherwise promote a transparent and efficient regional market. 1996 FERC Order at pp. 280-86. In addition, the agency mandates that an ISO have strict conflict of interest standards and that ISO employees have no financial interest in the economic performance of power market entities. Id.
[4] More recently, FERC has encouraged the formation of large Regional Transmission Organizations ("RTOs") to control electric transmission facilities and to ensure competitive wholesale electric markets. Regional Transmission Organizations, FERC Order No. 2000 (December 20, 1999). FERC has noted that an ISO that satisfies FERC principles could also qualify to become an RTO. Id. at p. 8.
[5] The petition originally identified a pre-existing organization, PJM Interconnection Association, as the proposed ISO. While the petition was pending before FERC, that entity was reorganized as a limited liability company and renamed, effective March 31, 1997.
[6] FERC recently approved PJM-LLC as an RTO. See Order Provisionally Granting RTO Status; FERC Docket No. RTO1-2-000 (July 12, 2001). See also note 4 above.
[7] We understand that the Maryland Public Service Commission has elected not to become an ex officio member of PJM LLC.
[8] The operating agreement limits each state to one vote for a state consumer advocate office. Thus, if more than one consumer advocate office from a particular state become members of the ISO, they are to designate one representative to vote. PJM LLC Operating Agreement, § 8.2.3(b).
[9] The provision also bars a state consumer advocate office from participating in any of the markets managed by the ISO. PJM LLC Operating Agreement, § 8.2.3.
[10] The effect of this amendment is to eliminate the current qualification that a state consumer advocate member is relieved of liability "to the extent such liability arises by virtue of its participation in the Members Committee."
[11] Indeed, when the Legislature first granted this authority in 1975, it specifically identified the Federal Power Commission, the predecessor of FERC, as an agency before which the Office of People's Counsel would appear. Chapter 315, Laws of Maryland 1975.
[12] For example, you advise that, in the past, transmission rate design often generated administrative litigation before FERC concerning issues such as the share of costs to be borne by different types of customers, the appropriate cost recovery period for different types of utility assets, and the duration of the rate schedule. FERC has recently clarified that PJM LLC will be the initial forum for such issues. Order Provisionally Granting RTO Status, FERC Docket No. RT01-2-000 (July 12, 2001), at p. 45.
[13] In our view, membership in the ISO would not implicate the ethical rules applicable to employees of the Office of People's Counsel. Under State law, employees of the Office of People's Counsel, as well as specified family members, may not "hold an official relation to or connection with a public service company." PUC § 2-303(b)(1). This provision would likely bar any individual in the Office from membership in an ISO. However, the conflict of interest rule applies to individuals and, as we understand the current proposal, it is the Office of People's Counsel itself, not any individual in the Office, that would become a member of PJM LLC.
[14] Apparently, the use of the LLC form for PJM LLC is for purposes of flexibility rather than tax-related, as the operating agreement specifies that the LLC is to make appropriate filings to be taxed as a corporation. PJM LLC Operating Agreement, § 6.1.
[15] The Delaware LLC Act provides:
 (c) To the extent that, at law or in equity, a member or manager or other person has duties (including fiduciary duties) and liabilities relating thereto to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement:
 (1) Any such member or manager or other person acting under a limited liability company agreement shall not be liable to the limited liability company or to any such other member or manager or to any such other person for the member's or manager's or other person's good faith reliance on the provisions of the limited liability company agreement; and
 (2) The member's or manager's or other person's duties and liabilities may be expanded or restricted by provisions in a limited liability agreement.
Delaware LLC Act § 18-1101(c).
[16] A body of law has developed with respect to corporations concerning the circumstances under which a court will disregard a corporate entity and hold a shareholder liable for corporate debts. 18 Am. Jur. 2d Corporations §§ 42-54. This is commonly referred to as "piercing the corporate veil." Under similar circumstances, a court may "pierce the entity veil" to impose liability on a member of an LLC. Murdock, supra, at pp. 504-5; Note, supra, at pp. 209-14. One commentator has concluded that courts look to two key elements to ignore the corporate or LLC shield against member liability: (1) whether there is a unity of interest and ownership such that the corporation/LLC and shareholder/member are not truly separate personalities; and (2) whether recognition of the limited liability entity would sanction a fraud, promote an injustice, or result in inequity. Murdock, supra, at p. 510.
In our view, the legal theories for piercing the entity veil are unlikely to pertain to a State consumer advocate agency that is an ex officio member of an ISO organized as a limited liability company. For example, it is highly unlikely that a court would regard the ISO as the "alter ego" of the State consumer advocate or find that the State agency, which is shielded by sovereign immunity, became a member of the LLC to avoid a liability that it would otherwise incur.
[17] The operating agreement requires that members indemnify each other, as well as related parties, as follows:
 (a) As between the Members, except as may be otherwise agreed upon between individual Members with respect to specified interconnections, each Member will indemnify and hold harmless each of the other Members, and its directors, officers, employees, agents, or representatives, of and from any and all damages, losses, claims, demands, suits, recoveries, costs and expenses (including all court costs and reasonable attorneys' fees), caused by reason of bodily injury, death or damage to property of any third party, resulting from or attributable to the fault, negligence or willful misconduct of such Member, its directors, officers, employees, agents, or representatives, or resulting from, arising out of, or in any way connected with the performance of its obligations under this Agreement, excepting only, and to the extent, such cost, expense, damage, liability or loss may be caused by the fault, negligence or willful misconduct of any other Member. The duty to indemnify under this Agreement will continue in full force and effect notwithstanding the expiration or termination of this Agreement or the withdrawal of a Member from this Agreement, with respect to any loss, liability, damage or other expense based on facts or conditions which occurred prior to such termination or withdrawal.
PJM LLC Operating Agreement, § 16.1(a).
[18] See Kent County v. Shepherd, 713 A.2d 290 (Del. 1998) (Delaware courts not required to accord the State of Maryland sovereign immunity or give full faith and credit to the Maryland Tort Claims Act).
[19] This analysis is based upon a review of the PJM LLC Operating Agreement. Delaware law permits members of an LLC to agree to assume liability by an agreement other than in the operating agreement. We understand that the proposed membership of the Office of People's Counsel in the ISO does not involve any separate agreements in which the Office would assume liability to other members or to the LLC.
 *Page 211