**William L. ADAMS, Petitioner Below, Appellant,**

v.

**DELMARVA POWER & LIGHT COMPANY, Respondent Below, Appellee.**

Supreme Court of Delaware.

Submitted: March 13, 1990.

Decided: May 10, 1990.

Rehearing Denied June 14, 1990.

Alan T. Boyd of Bayard, Handelman & Murdoch, P.A., Wilmington, for appellant.

Julius Komissaroff of Komissaroff & Perry, Wilmington, for appellee.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

HOLLAND, Justice:

The petitioner-appellant, William L. Adams ("Adams"), was employed by the respondent-appellee, Delmarva Power & Light Company ("Delmarva"). Adams was driving a motor vehicle owned by Delmarva when he was injured in a collision, caused by a third party tortfeasor. The sole question presented in this appeal is whether an employer's workmen's compensation insurer is entitled to a set-off, under 19 *Del.C.* § 2363, for payments made to the employee by the employee's own underinsured motorist insurer. The Industrial Accident Board and the Superior Court answered that question in the affirmative. We have concluded that those decisions must be reversed.

### Facts

On February 12, 1982, Adams was operating a motor vehicle owned by Delmarva, during the course of his employment, when he was injured in an automobile accident caused by the driver of another motor vehicle. At the time of the accident, the third party tortfeasor had $25,000 in liability coverage. Adams instituted an action in Superior Court to recover damages from the third party tortfeasor.

The tortfeasor's insurer eventually paid its full coverage amount of $25,000 to Adams. Adams had independently purchased underinsured motorist coverage, for himself and his family, with a combined single limit of $300,000. Adams' own underinsured motorist carrier paid Adams an additional $175,000. Adams had also previously received $18,899.86 from Delmarva's workmen's compensation insurer for the wages he lost as a result of the accident.

Adams acknowledges that Delmarva's workmen's compensation insurer has a right of subrogation which is recoverable against the entire $25,000 he recovered from the third party tortfeasor. 19 *Del.C.* § 2363. Delmarva's workmen's compensation insurer contends that it is also entitled to a set-off against the $175,000 Adams received from his own insurer, for any workmen's compensation payments which it would otherwise have to make to Adams in excess of $25,000. However, Adams' own insurance policy expressly prohibited his underinsured motorist coverage from

applying for the benefit of a claim by any workmen's compensation carrier.[1]

### Procedural History

This action originated when Adams filed a petition with the Industrial Accident Board for additional compensation from Delmarva for permanent partial disability. Delmarva's workmen's compensation insurer opposed Adam's petition. It contended that an employer has a right of set-off, under 19 *Del.C.* § 2363, for payments made to the employee by his or her own underinsured motorist coverage carrier. The Industrial Accident Board agreed with Delmarva's insurer and permitted a set-off against the net recovery received by Adams, from his own underinsured motorist carrier. The Board relied upon this Court's opinion in *Harris v. New Castle County,* Del.Supr., 513 A.2d 1307 (1986).

Adams appealed the decision of the Industrial Accident Board to the Superior Court. The Superior Court affirmed the Board's decision. It held that the clause in Adams' underinsured motorist policy, which precluded it from benefiting any workmen's compensation carrier, was unenforceable under the public policy of 19 *Del.C.* § 2363(e). The Superior Court found that, as a matter of public policy, Delaware prohibits an employee from recovering both workmen's compensation benefits and damages. The Superior Court also relied upon this Court's decision in *Harris.*

### Workmen's Compensation/Prior Precedents

The Delaware Workmen's Compensation statutes allow an injured employee to receive a portion of his salary from his employer after an accident which occurred during the course of employment. 19 *Del.C.* § 2304. Thereafter, the employer is permitted to stand in the place of the employee and

recover any amount which the employee or his [or her] dependents or personal representative would be entitled to recover in an action in tort. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workmen's compensation insurance carrier for any amounts paid or payable under the Workmen's Compensation Act to date of recovery, and the balance shall forthwith be paid to the employee or his [or her] dependents or personal representative and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

19 *Del.C.* § 2363(e).

In somewhat similar circumstances, this Court and the Superior Court have reviewed, in part, the public policy considerations of Section 2363(e) and its predecessor. *Harris v. New Castle County,* 513 A.2d at 1309; *State v. Donahue,* Del.Super., 472 A.2d 824, 827–29 (1983). In each of these cases, it was determined that the public policy of Delaware was consistent with an employer's claim of subrogation for workmen's compensation benefits paid by its insurer. However, in each of these cases the factual record was different in one important respect from the case *sub judice:* the *employer* had purchased the independent underinsured motorist coverage from which the employee had been paid for his injuries. No Delaware court has ruled upon an employer's request for subrogation under Section 2363(e) when the claim is asserted against the proceeds from underinsured motorist insurance coverage purchased *by the employee.*

Although the Delaware courts have not ruled on the precise issue presented in this appeal, the Superior Court identified the question in *State v. Donahue,* Del.Super., 472 A.2d 824 (1983). In *Donahue,* the employee was driving the employer's vehicle

---

**1.** The clause in the policy to which we are referring is as follows:

This policy does not apply under ... [Underinsured Motorists' Insurance] ... so as to inure directly or indirectly to the benefit of any workmen's compensation or disability benefits carrier or any person or organization qualifying as a self insurer under any workmen's compensation or disability benefits law or any similar law.

and was involved in a work related automobile accident, which was caused by a third party tortfeasor, who was underinsured. 472 A.2d at 826. The employer's underinsured motorist coverage insurer paid $25,000.00 to the employee. *Id.* The employer then sought to enforce subrogation rights under Section 2363 for the workmen's compensation benefits it had previously paid to the employee. *Id.* When the Superior Court held that the employer's workmen's compensation insurer had subrogation rights which were enforceable, it noted specifically that it was not deciding the issue presented here by Adams:

> Since the fact situation in the case, *sub judice*, includes un[der]insured motorist coverage paid for *by the employer*, this Court declines to rule as to whether an employer or his insurance carrier would have a right to reimbursement from proceeds paid *by an employee's own uninsured motorist carrier.*

*Id.* at 828 (emphasis added). In *Harris*, this Court affirmed the holding of *Donahue*, when it was confronted with a "factual record indistinguishable" from *Donahue*. *Harris v. New Castle County*, 513 A.2d at 1308.

The case cited and relied upon by both the Superior Court in *Donahue* and this Court in *Harris* was *Johnson v. Fireman's Fund Ins. Co.*, 425 So.2d 224, 228 (La. 1982). In *Johnson*, the Supreme Court of Louisiana held that, if the employee had paid for the underinsured motorist cover-age, the employer would have no right of subrogation. *Id.* We find that distinction which was recognized in *Johnson* is dispositive of the competing public policy issues presented in Adams' appeal.

### Public Policy/Underinsured Motorist Protection

In the case *sub judice*, we are required to examine the public policy of Delaware's workmen's compensation law and the public policy of permitting one to insure themselves against injury by an underinsured third party tortfeasor. In an analogous context, this Court has recently considered the public policy of Delaware's no fault statute in relationship to the collateral source rule [2] and the contrasting considerations of the right to contract for double recovery. *State Farm Mut. Auto. Ins. v. Nalbone*, Del.Supr., 569 A.2d 71, 72–73 (1989).[3] After an examination of those competing concepts, this Court held that "the [public] policy goals of no-fault insurance can best be served by application of principles of contract rather than tort law." *Id.* at 75. In *Nalbone*, this Court held that if the insured has paid consideration for recovery from a collateral source, then double recovery should be allowed. *Id.*[4]

■ Delaware courts have consistently applied principles of contract to a subrogation claim in the context of a workmen's compensation proceeding, when that claim originated with the act of a third party tortfeasor. *Harris v. New Castle*, 513

**2.** The collateral source rule was first recognized in Delaware in *Yarrington v. Thornburg*, Del. Supr., 205 A.2d 1 (1964). Although the rule was not invoked, the *Yarrington* Court did explain the rule:

> The collateral source doctrine is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant. The doctrine, however, does permit the tortfeasor to obtain the advantage of payments made by himself or from a fund created by him; in such an instance the payments come, not from a collateral source, but from the defendant himself.

205 A.2d at 2 (citations omitted).

**3.** In *Nalbone*, State Farm sought a declaratory judgment to determine its obligation to pay no-fault benefits to the insured pursuant to 21 *Del.C.* § 2118. State Farm only paid the claimant the difference between her normal net weekly earnings and the amount paid by her employer under its wage continuation plan. The question presented in *Nalbone* was whether the claimant was entitled to full payment of the personal injury protection, or "PIP," benefits in addition to her employer's disability benefits. 569 A.2d at 72.

**4.** In *Nalbone*, this Court allowed a set-off, since it held that the PIP benefits were not supported by actual consideration or detriment from the claimant. 569 A.2d at 76. In so ruling, the majority in *Nalbone* expressly recognized that the receipt of independently purchased benefits would not be barred by its holding. *Id.* at 75 n. 3.

A.2d at 1309; *State v. Donahue*, 472 A.2d at 826. A contractual analysis is also contemplated by the underinsured motorist statute. Under 18 *Del.C.* § 3902(b), every insurer must offer its insureds the option of contracting for up to $300,000 of uninsured/underinsured coverage.[5] "[T]he public policy underlying section 3902 is to permit an insured to protect himself from an irresponsible driver causing death or injury. This public policy is achieved by making available coverage that mirrors his liability insurance through the purchase of uninsured [underinsured] motorist coverage." *Frank v. Horizon Assur. Co.*, Del. Supr., 553 A.2d 1199, 1205 (1989) (citation omitted). Recently, this Court has observed:

> while the insured's basic liability protection allows him to create a fund to indemnify losses arising from his own negligent acts, uninsured/underinsured coverage permits him to establish a fund of the same value to protect against losses caused by drivers who carry less liability coverage. When a motorist who carries full uninsured/underinsured coverage takes to the highways, he knows that a certain amount of protection will always be available. The value of that coverage will be the same whether the accident is caused by the insured himself or by another driver who carries a lesser amount of liability protection.

*Aetna Cas. and Sur. Co. v. Kenner*, Del. Supr., 570 A.2d 1172, 1175 (1990). Delaware's public policy, as specifically set forth in the underinsured motorist statute,

permits such coverage to be *contracted* for by "the rational and informed consumer." *Id.* at 1176. Thus, uninsured/underinsured protection is supplemental in nature.

### This Case

■ In this case, the Superior Court found that Adams had paid independent consideration for additional coverage as a protection against injury by an underinsured motorist. However, the Superior Court concluded that the provision in that additional coverage, which precluded it from accruing to the benefit of a workmen's compensation insurance carrier, violated the public policy of Delaware. We find that the Superior Court's decision is contrary to this Court's decisions in *Horizon*, *Kenner*, and the distinction recognized by *Johnson*, the authority relied upon in both *Donahue* and *Harris*.

Underinsured motorist coverage is made available in Delaware pursuant to 18 *Del.C.* § 3902. The public policy of that statute is to permit a person, like Adams, to establish a fund to protect against losses caused by underinsured motorists, by contracting for supplemental coverage. *Kenner v. Aetna Cas. and Sur. Co.*, 570 A.2d at 1175; *Frank v. Horizon Assur. Co.*, 553 A.2d at 1205. The language of Adams' underinsured motorist coverage, precluding its applicability to claims made by workmen's compensation carriers, promotes that public policy by preventing a diminution in the additional fund which Adams sought, by contract, to provide as protection for himself and his family.[6] The Superior Court

---

**5.** Underinsured motorist protection is a form of uninsured motorist coverage. *Home Ins. Co. v. Maldonado*, Del.Supr., 515 A.2d 690, 696 (1986).

**6.** The rulings of other jurisdictions on this issue are in agreement. *See Johnson v. Fireman's Fund Ins. Co.*, 425 So.2d 224, 228 (La.1982) (if employee had paid for the underinsured motorist coverage, the employer would have no reimbursement rights); *Merchants Mut. Ins. v. Orthopedic Professional*, 480 A.2d 840, 846 (N.H. 1984) (the employee sought to protect himself and his family by purchasing additional insurance to supplement benefits to which he may be entitled under the workmen's compensation statute and this "duplicate benefit" is permitted); *Southeast Furniture Co. v. Barrett*, 24 Utah 2d 24, 465 P.2d 346, 348 (1970) (no public policy

against an employee protecting himself over statutory benefits, and this will be allowed absent clear legislative intent otherwise); *State Farm Mut. Auto. Ins. Co. v. Karasek*, 22 Ariz. App. 87, 523 P.2d 1324 (1974) (policy provision reducing amounts payable under underinsured motorist coverage violated public policy of State where employee himself paid the premiums). *But see Englehardt v. New Hampshire Ins. Group*, 36 Conn.Supp. 256, 417 A.2d 366, 368 (1980) (workmen's compensation set-off is valid in Connecticut whether paid for by employer or employee). States, like New Jersey, which have ruled to the contrary, have done so under clear legislative intent. *See Midland Ins. Co. v. Colatrella*, 102 N.J. 612, 510 A.2d 30, 33 (1986) ("the [l]egislature has expressed its intent that a compensation lien should attach to the recovery

erred, as a matter of law, in ruling that the public policy of Delaware prohibits a risk-averse insured from contracting for such additional recovery. *State Farm Mut. Auto. Ins. v. Nalbone*, Del.Supr., 569 A.2d 71, 75 (1989).

The decision of the Superior Court is REVERSED.

from a third-party tortfeasor") *and Wilson v. Unsatisfied Claim and Judgment Fund Bd.*, 109 N.J. 271, 536 A.2d 752, 757 (1988) ("If there is one definite principle that emerges from our PIP law, policy, and precedent, it is that there shall be no double recovery of PIP benefits.") (citations omitted).