**Nadine KENT, Plaintiff,**

v.

**NATIONWIDE PROPERTY & CASUALTY INSURANCE CO. Defendant.**

**C.A. No. 02C-12-094 SCD.**

Superior Court of Delaware. New Castle County.

Submitted: Dec. 11, 2003.

Decided: March 10, 2004.

Beverly L. Bove, Vincent J.X. Hedrick, II, and Aaron R. Goldstein, (argued), of Beverly L. Bove, Attorney at Law, of Wilmington, Delaware for Plaintiff Nadine Kent.

Charles P. Coates, III, (argued), of Bouchelle & Palmer, of Newark, Delaware for Defendant Nationwide Property & Casualty Insurance Company.

## OPINION

DEL PESCO, J.

Plaintiff, Nadine Kent ("Kent"), an insured of defendant Nationwide Property and Casualty Insurance Company ("Nationwide"), seeks uninsured insurance benefits pursuant to her policy of insurance. Kent was injured in the State of New Jersey by a tortfeasor who had insurance. The tortfeasor's insurance company has refused Kent's claim for noneconomic damages on the grounds that her injuries do not meet the verbal threshold requirements of that State's insurance statute which immunizes the tortfeasor from such a claim.[1]

The question presented in this motion for summary judgment is whether an insured who is a Delaware resident and who has uninsured motorist coverage in a policy issued in Delaware is entitled to recover uninsured benefits for noneconomic damages arising from an automobile accident that occurred in New Jersey between the insured and a New Jersey resident, when New Jersey law precludes the recovery of such noneconomic damages from the tortfeasor. I conclude that the legislative intent of the Delaware statute governing uninsured claims requires that such benefits be available.

### Legal Standard for Summary Judgment

A motion for summary judgment requires the Court to examine the record to determine whether there are any genuine issues of material fact or whether the evidence is so one-sided that one party should prevail as a matter of law.[2] If, after viewing the record in light most favorable to the nonmoving party, the Court finds no genuine issue of material fact, summary judgment is appropriate.[3] However, summary judgment may not be granted when the record indicates a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.[4]

### Choice of Law

■ The analysis begins with a determination as to the law applicable, either New Jersey or Delaware.

The courts of Delaware have adopted the choice of law approach of the Second Restatement in contract cases.[5] The *lex loci* analysis was applied in tort actions in Delaware until *Travelers Indemnity Co. v.*

---

1. New Jersey's verbal threshold statute reads in pertinent part:

 Every owner, registrant, operator or occupant of an automobile to which ... personal injury protection coverage, or ... medical expense benefits coverage, regardless of fault, applies, and every person or organization legally responsible for his acts or omissions, is hereby exempted from tort liability for noneconomic loss to a person who is subject to this section and who is either a person who is required to maintain personal injury coverage ... as a result of bodily injury, arising out of ownership, operation, maintenance or use of such automobile in this State, unless that person has sustained a bodily injury which results in death; dismemberment; significant disfigurement or

 significant scaring; displaced fractures; loss of fetus; or a permanent injury within a reasonable degree of medical probability, other than scaring or disfigurement.
 N.J. STAT. ANN. § 39:6A–8 (West 2001).

2. *Burkhart v. Davies*, 602 A.2d 56, 59 (Del. 1991).

3. *Hammond v. Colt Industries Operating Corp.*, 565 A.2d 558, 560 (Del.Super.1989).

4. *Wilson v. Triangle Oil Co.*, 566 A.2d 1016, 1018 (Del.Super.1989).

5. *Oliver B. Cannon & Son, Inc., v. Dorr–Oliver, Inc.*, 394 A.2d 1160, 1166 (Del.1978); *Travelers Indemnity Co. v. Lake*, 594 A.2d 38, 45 (Del.1991).

*Lake.*[6] *Lake* reached two decisions that are key to this analysis. It concluded that a claim for benefits under an insurance policy arises from a contract,[7] but that tort law must be applied to assess the underlying damages.[8] It also concluded that the minimum contact analysis set forth in Section 145 of the Second Restatement would henceforth be applied in tort actions.[9]

Section 145 of the Second Restatement provides that the local law of the state which "has the most significant relationship to the occurrence and the parties under the principles stated in § 6" will govern the rights of litigants in a tort suit.[10] Section Six lists the following choice of law considerations:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issues,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.[11]

The contacts which the court should consider when applying the Section Six principles are as follows:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.[12]

New Jersey has no interest in this dispute. While the accident occurred in New Jersey, involving a New Jersey resident, and New Jersey law gives the tortfeasor immunity from suit for noneconomic loss in furtherance of New Jersey's overall effort to contain the cost of automobile insurance in that jurisdiction, such New Jersey public policies are not impacted by the resolution of this case.[13] The New Jersey tortfeasor will not be impacted, and that is the party protected by the New Jersey statute.

In contrast, the relationship between the parties arises from a contract between a Delaware citizen and an insurance company registered to do business in Delaware. The contract was entered into and the premiums were paid in Delaware. The policy relates to a vehicle registered in Delaware and the scope of the coverage provided in the policy is governed by Dela-

---

6. *Lake*, 594 A.2d 38.

7. *Id.* at 41.

8. *Id.* at 43.

9. *Id.* at 47.

10. RESTATEMENT (SECOND) OF CONFLICTS § 145(1) (1971).

11. *Turner v. Lipschultz*, 619 A.2d 912, 914 n. 4 (Del.1992), citing RESTATEMENT (SECOND) OF CONFLICTS § 6.

12. *Id.*, citing RESTATEMENT (SECOND) OF CONFLICTS § 145(1) (1971). In determining application of tort law, comment (e) of § 145 provides: "When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the state of the applicable law." *Id.*

13. *Whitaker v. DeVilla*, 147 N.J. 341, 687 A.2d 738, 741–44 (1997).

ware statutes. The public policy of Delaware, expressed in its uninsured motorist statute, is to permit a Delaware motorist to "take to the roads" knowing "that a certain amount of protection will always be available."[14] "[T]he legislative purpose of [18 *Del. C.* § 3902 is] protecting people injured by tortfeasors carrying little or no insurance."[15] Delaware has the most significant relationship to the issue presented.

### Delaware Uninsured Coverage

. 18 DEL. C. § 3902(a) provides in pertinent part:

No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are *legally entitled to recover damages* from owners or operators of *uninsured* or hit-and-run vehicles for bodily injury, sickness disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and run motor vehicle. (emphasis added).[16]

The term *uninsured vehicle* is, *inter alia*, "[o]ne for which there is no auto liability bond, insurance or *other security applicable* at the time of the accident...."[17] The insurance policy parallels the statute.[18]

The defendant argues that the plaintiff has failed to establish that the tortfeasor was uninsured. The plaintiff responds that the public policy of the Delaware statute requires that the tortfeasor be considered uninsured in order to achieve the legislative objective of the statute.

 Interpretation of contract language is treated as a question of law.[19] The scope of coverage is prescribed by the language of the policy, so long as it is consistent with the statute.[20] "[W]hen the language of an insurance contract is clear and unequivocal, a party will be bound by its plain meaning...."[21] Ambiguity is construed against the insurer, and in favor of the insured, because the insurer drafted the language.[22]

There are two issues: first, whether the tortfeasor *is uninsured* as contemplated by the statute, and second, whether plaintiff is *legally entitled to recover damages*.

There are two decisions of this court which have analyzed the impact of the New Jersey verbal threshold requirement.

---

14. *Adams v. Delmarva Power & Light Co.*, 575 A.2d 1103, 1107 (Del.1990); *Lake*, 594 A.2d at 43 quoting *Aetna Casualty & Surety Co. v. Kenner*, 570 A.2d 1172, 1174 (Del.1990).

15. *Deptula v. Horace Mann Ins. Co.*, 842 A.2d 1235 (Del.Supr.2004).

16. DEL.CODE ANN. tit. 18, § 3902(a) (1999).

17. DEL CODE ANN. tit. 18, § 3902(a)(3)(a). (emphasis added)

18. Page U2 of the policy provides that a uninsured motor vehicle is:

 a. one for which there is no auto liability bond, insurance, or other security in

effect, applicable to ... any other liable person ... at the time of the accident;

 b. one which is underinsured....;

 c. one for which the insuring company denies coverage or becomes insolvent;

 d. a hit and run vehicle....

19. *Emmons v. Hartford Underwriters Ins. Co.*, 697 A.2d 742, 745 (Del.1997)

20. *Cropper v. State Farm Auto. Ins. Co.*, 671 A.2d 423, 425 (Del.Super.1995).

21. *Hallowell v. State Farm Mut. Ins. Co.*, 443 A.2d 925, 926 (Del.1982).

22. *Emmons*, 697 A.2d at 745, citing *Hallowell*, 443 A.2d at 926.

*Thornton v. Boswell*[23] arose in the context of a personal injury filed in Delaware by a New Jersey resident who was in an accident in Delaware. The issue was whether the verbal threshold contained in the plaintiff driver's insurance policy bound plaintiff to a limitation of damages as specified in her insurance contract. The court did a choice of law analysis and concluded that the most significant relationship test favored the application of Delaware law thereby permitting the presentation of damages in the tort action that would not be recoverable under the New Jersey insurance plan.

*Latch v. Nationwide Mutual Insurance Co.*[24] considers an action brought against defendant insurer to recover underinsured motorist benefits. Wife's claim against the tortfeasor in New Jersey was dismissed based on her failure to meet the verbal threshold requirements of the New Jersey statute. She then commenced an action in Delaware against her own insurance carrier seeking underinsured motorist benefits. Nationwide argued that plaintiff was precluded from recovering benefits because the tortfeasor was insured at the time of the accident and, consequently, did not meet the definition of an underinsured vehicle under *18 Del. C. § 3902(a)(3)*. That provision adds coverage "to pay for bodily injury damage that the insured ... [is] legally entitled to recover from the driver of an underinsured motor vehicle."[25] The court concluded that since the New Jersey court had dismissed the plaintiff's action, she was not legally entitled to recover the coverage she claimed.[26] *Latch* is distinguishable because the coverage claimed is pursuant to a different subdivision of the statute. The claim for entitlement rested on the underinsured motorist provisions, not the uninsured provisions.

More on point is *Cropper v. State Farm Automobile Insurance Co.*[27] The insureds brought suit seeking uninsured motorist benefits for an accident with an uninsured government-owned vehicle. The defendant insurance carrier denied benefits because the tortfeasor vehicle was not uninsured, i.e. it had *"other security applicable at the time of the accident in question."*[28] The Court held that the *"other security"* language is limited to an instrument or contract similar to an insurance policy and does not embrace the general concept of the financial viability of a tortfeasor.[29] The court also rejected the argument that the federal government is solvent and could be sued pursuant to the Federal Tort Claims Act.[30] It held that the uninsured coverage provision of the law applied "regardless of the underlying resources of the insured tortfeasor."[31] In order to effectuate its ruling, the Court struck the policy exclusion for government-owned vehicle as void and unenforceable because it

23. *Thornton v. Boswell*, 1995 WL 656807, 1995 Del.Super. LEXIS 443.

24. *Latch v. Nationwide Mut. Auto. Ins. Co.*, 1996 WL 191479, 1996 Del.Super. LEXIS 123. It is of note that the decision of the New Jersey Appellate Division in *Whitaker v. Devilla*, 287 N.J.Super. 370, 671 A.2d 163 (1996), relied upon by the court in *Latch*, was subsequently reversed in *Whitaker v. DeVilla*, 147 N.J. 341, 687 A.2d 738 (1997).

25. DEL.CODE ANN. tit. 18 § 3902(b)(1).

26. *Latch*, 1996 WL 191479 at *5, 1996 Del. LEXIS at *18.

27. *Cropper*, 671 A.2d 423.

28. *Id.* at 426; *see also* § 3902(a)(3)(a).

29. *Id.* at 426–27.

30. *Id.* at 425–26.

31. *Id.* at 426.

is contrary to public policy.[32]

The principle of *Cropper* has application here. "[A]n insurance company does not, for all purposes, stand in the shoes of the tortfeasor in a lawsuit between an insurance company and the insured. The insurance company cannot take advantage of all the defenses available to an [un]insured motorist."[33] The plaintiff's claim is uninsured because there is no insurance applicable to the claim she asserts for non-economic loss; there is no *other security applicable.* That being the case, she is entitled to secure the full extent of the benefit which she was permitted by law to purchase.[34] Whether she is *legally entitled to recover* such benefits will depend upon her ability to prove fault and damages.[35]

The defendant's motion for summary judgment is DENIED.

---

**32.** *Id.* at 427.

**33.** *State Farm Mut. Auto. Ins. Co. v. Gillette,* 251 Wis.2d 561, 641 N.W.2d 662, 672 (2002); *see also Stupak v. Hoffman–LaRoche, Inc.,* 287 F.Supp.2d 968, (E.D.Wis.2003); *Frydrych v. Wentland,* 252 Mich.App. 360, 652 N.W.2d 483, (2002). *Cf. Berardi v. Employers Mutual Cas. Co.,* 526 A.2d 515 (R.I.1987); *State Farm Mutual Auto. Ins. Co. v. Crockett,* 103 Cal. App.3d 652, 163 Cal.Rptr. 206 (1980); *Ryals v. State Farm Mutual Auto. Ins. Co.,* 134 Idaho 302, 1 P.3d 803 (2000); *Renwick v. Lightning Rod Mutual Ins. Co.,* 72 Ohio App.3d 708, 595 N.E.2d 1007 (1991); *Williams v. State Farm Auto. Ins. Co.,* 229 Conn. 359, 641 A.2d 783 (1994); *Crossley v. Pacific Employers Ins. Co.,* 198 Neb. 26, 251 N.W.2d 383, 385–86 (1977).

**34.** *Frank v. Horizon Assurance Co.,* 553 A.2d 1199, 1205 (Del.1989).

**35.** *Gillette,* 641 N.W.2d at 673.