## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant Below, Appellant,

v.

## Aneita PATTERSON, Plaintiff Below, Appellee.

No. 32, 2010.

Supreme Court of Delaware.

Submitted: Sept. 1, 2010.

Decided: Nov. 8, 2010.

---

**11.** *See Evans v. Justice of the Peace Court No. 19*, 652 A.2d 574, 577 (Del.1995); *McCool v.* *Gehret*, 657 A.2d 269, 278–81 (Del.1995).

Matthew E. O'Byrne, Esquire (argued) and Joshua Myeroff, Esquire, of Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware, for the Appellant.

Kenneth M. Roseman, Esquire (argued) of Kenneth M. Roseman, P.A., Wilmington, Delaware, for the Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices constituting the court en Banc.

RIDGELY, Justice, for the Majority:

This action involves a dispute over Delaware uninsured motorist ("UM") benefits. Aneita Patterson is a Delaware resident who was injured while driving her automobile in New Jersey. A New Jersey resident, Jean Armstrong, was at fault for the collision. Patterson filed a claim against Armstrong's insurance carrier, Allstate. Allstate denied the claim. Patterson then brought this action for uninsured motorist benefits against her Delaware insurance carrier, State Farm. State Farm moved for summary judgment on the ground that Patterson was not "legally entitled to recover" from Armstrong under the New Jersey law, and therefore, was not eligible to receive UM benefits under the State Farm policy. The Superior Court determined that Delaware law applied, denied State Farm's motion for summary judgment and awarded compensatory damages to Patterson. On appeal, State Farm argues that the Superior Court erred as a matter of law in concluding that Patterson was "legally entitled to recover" against the tortfeasor under title 18, section 3902(a) of the Delaware Code. We find no merit to State Farm's position and affirm.

### Facts and Procedural History

Jean Armstrong rear ended Aneita Patterson on a New Jersey highway on February 1, 2007. Patterson is a Delaware resident and her vehicle is registered in Delaware. Her Delaware carrier, State Farm Mutual Automobile Insurance Company, insured her under a policy issued in Delaware. Allstate Insurance Company insured Armstrong.

After the accident, Patterson filed a third party bodily injury claim for soft tissue injuries with Allstate. Allstate denied Patterson's claim because Allstate did not believe that Patterson had pierced the

"verbal threshold" under the New Jersey Verbal Tort Threshold Statute, which limits tort based recovery in New Jersey.[1]

On April 16, 2008, Patterson sued State Farm in the Delaware Superior Court to recover UM benefits under her own Delaware insurance policy. Patterson's insurance policy provided for UM benefits up to $100,000 per person and $300,000 per accident. Although the parties agree that Armstrong is uninsured and at fault for the collision, State Farm denied coverage and moved for summary judgment on the ground that Patterson was not "legally entitled to recover" from Armstrong under the New Jersey Verbal Tort Threshold Statute. The Superior Court disagreed and denied State Farm's summary judgment motion, concluding that Delaware law applies and Patterson could recover UM benefits to the extent she could prove fault and damages.

Patterson and State Farm then stipulated that they would submit the issue of damages to an inquisition before a Superior Court Commissioner. The Commissioner determined the fair compensation for Patterson's injuries to be $20,000. The Superior Court entered a final judgment in that amount in favor of Patterson and this appeal followed.

## Standard of Review

■ "This Court reviews *de novo* the Superior Court's grant or denial of summary judgment 'to determine whether,

viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law.'"[2] We review *de novo* questions of statutory interpretation.[3]

## Title 18, Section 3902 of the Delaware Code

Section 3902 requires all Delaware insurance policies to provide UM benefits to protect insured drivers from owners or operators of uninsured or hit-and-run vehicles. Section 3902(a) relevantly provides:

No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are *legally entitled to recover damages* from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.

■ Consistent with section 3902(a), the policy issued by State Farm to Patterson provides UM benefits "for bodily injury and property damage an insured is legally entitled to recover from the owner or driv-

1. According to New Jersey's "verbal threshold" statute, noneconomic damages for personal injury are only available in cases of "death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement." N.J. Stat. Ann. § 39:6A–8. In this case, the parties dispute whether Patterson's injury is sufficiently permanent, within the

meaning of the final category, to defeat this limitation on recovery.

2. *Brown v. United Water Delaware, Inc.*, 3 A.3d 272, 275 (Del.2010) (quoting *Estate of Rae v. Murphy*, 956 A.2d 1266, 1269–70 (Del. 2008)).

3. *Freeman v. X–Ray Assocs., P.A.*, 3 A.3d 224, 227 (Del.2010) (citing *Dambro v. Meyer*, 974 A.2d 121, 129 (Del.2009)).

er of an uninsured vehicle." There is no dispute that if Delaware law applies, Patterson is entitled to recover the damages which the New Jersey statute disallows. Delaware courts have consistently interpreted section 3902 to protect Delaware motorists from an irresponsible driver causing injury or death.[4] The statute permits a Delaware motorist to "mirror his own liability coverage and take to the roads knowing that a 'certain amount of protection will always be available.'"[5]

Although a claim for insurance policy benefits arises out of contract, we have held that tort law governs the assessment of the underlying damages.[6] To determine whether Patterson is "legally entitled to recover" the underlying damages in this case, we must determine by a choice of law analysis whether Delaware law or New Jersey law applies.

### The Choice of Law Analysis

■ When conducting a choice of law analysis, Delaware Courts follow the "most significant relationship" test in the Restatement (Second) of Conflict of Laws.[7] Section 145(1) of the Restatement provides that the law of the state with the most significant relationship to the occurrence and the parties under the principles stated in § 6 is the governing law.[8] Section 6(2) provides that the following seven factors are relevant in conducting a choice of law inquiry:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Section 145(2) also instructs that when applying the section 6 factors, courts should take into account the following four contacts:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Finally, section 146 provides that the law of the state where the injury occurred should apply "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in [section] 6 to the occurrence and the parties."

### Delaware Law Applies

■ We find that Delaware has a more significant relationship to the occurrence and the parties under the section 6 factors and section 145(2) contacts. Patterson is a Delaware resident suffering in Delaware

**4.** *See Deptula v. Horace Mann Ins. Co.,* 842 A.2d 1235, 1237 (Del.2004).

**5.** *Travelers Indem. Co. v. Lake,* 594 A.2d 38, 42 (Del.1991) (quoting *Adams v. Delmarva Power & Light Co.,* 575 A.2d 1103, 1107 (Del.1990)).

**6.** *See id.* at 41, 43.

**7.** *See id.* at 46–47 (replacing *lex loci delicti* with the Restatement's "most significant relationship" test).

**8.** RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971).

from the consequences of her injuries,[9] State Farm, a Delaware carrier, insured Patterson for bodily injury under a policy issued in Delaware,[10] and the parties' relationship and dispute are centered in Delaware.[11] Most importantly, Delaware has a strong policy in favor of Delaware motorists taking to the roads knowing that a certain amount of protection will always be available.[12] Even though the collision occurred in New Jersey due to the fault of a New Jersey resident, there is no compelling issue of New Jersey public policy here.

This Court's decision in *Travelers Indem. Co. v. Lake* [13] is directly on point. At issue in *Lake* was a choice between Delaware law and Quebec law on the amount of damages a Delaware resident could recover from a Delaware insurance carrier. Quebec law set a limit of $29,400 on any damages recovery. Under Delaware law, the plaintiff in *Lake* could recover the full amount of monetary damages up to the policy limit of $300,000. In *Lake*, we adopted the "most significant relationship" test and concluded that Delaware law applied on the legal issue of the amount of damages the plaintiff could recover. We explained:

> There is no compelling issue of Quebec public policy here. The parties are not residents of Quebec. The truck Lake was driving when the accident occurred was not registered in Quebec. The only connection with Quebec is that the accident occurred there.
>
> In comparison, Delaware clearly has the "most significant relationship" to the is-

sues presented. Lake is a resident of Delaware. Travelers obviously conducts substantial business here. *The uninsured motorist coverage provision of Lake's policy arose out of Delaware law and involves issues of vital importance to all Delaware citizens.*[14]

While the tortfeasor in *Lake* was not a resident of Quebec, we find that distinction to be of no moment. The rationale of *Kent v. Nationwide Prop. & Cas. Ins. Co.*,[15] which we find persuasive, explains why. In *Kent*, the Superior Court considered facts nearly identical to this case. There, in concluding that New Jersey had no interest in the dispute, the Superior Court said:

> While the accident occurred in New Jersey, involving a New Jersey resident, and New Jersey law gives the tortfeasor immunity from suit for noneconomic loss in furtherance of New Jersey's overall effort to contain the cost of automobile insurance in that jurisdiction, such New Jersey public policies are not impacted by the resolution of this case. The New Jersey tortfeasor will not be impacted, and that is the party protected by the New Jersey statute.[16]

The Superior Court concluded that Delaware law applied because Delaware had the most significant relationship to the issue:

> [T]he relationship between the parties arises from a contract between a Delaware citizen and an insurance company registered to do business in Delaware. The contract was entered into and the

9. *See* RESTATEMENT § 145(2)(c).

10. *See id.*

11. *See* RESTATEMENT § 145(2)(d).

12. *See Lake*, 594 A.2d at 42; RESTATEMENT §§ 6(2)(b), (d), (e) and (f).

13. 594 A.2d 38 (Del.1991).

14. *See Lake*, 594 A.2d at 48 (emphasis added).

15. 844 A.2d 1092 (Del.Super.2004).

16. *Id.* at 1095 (citation omitted).

premiums were paid in Delaware. The policy relates to a vehicle registered in Delaware and the scope of the coverage provided in the policy is governed by Delaware statutes. The public policy of Delaware, expressed in its uninsured motorist statute, is to permit a Delaware motorist to take to the roads knowing that a certain amount of protection will always be available.[17]

We agree with this rationale, which applies with equal force here.

A Delaware resident who is driving out of state does not have to travel far to encounter limitations imposed by (non-Delaware) local law on actual damages caused by a tortfeasor outside of Delaware. But what is critical is that the consequences of that tortfeasor's conduct are suffered in Delaware which imposes no thresholds or caps on actual damages. Those consequences are not suffered in the state where the accident occurred. Delaware has the most significant interest in applying its law where what is at stake is the right of the injured Delaware citizen to recover the full amount of his or her actual damages.[18] We recognize that New Jersey has an interest in reducing premiums for its citizens by abrogating certain damages claims. But that interest is minimal when compared to the interest of Dela-

ware, which is the most significant interest in the circumstances presented here. For that reason, a proper application of our choice of law rule compels the conclusion that Delaware law applies and that the Superior Court did not err in applying Delaware law in this case.[19]

## No Statute of Limitations Bar

Finally, State Farm argues that Patterson is barred from recovery because the applicable statute of limitations has run. In *Allstate Ins. Co. v. Spinelli*,[20] this Court held that the applicable statute of limitations on an UM benefits cause of action is controlled by contract law and is, therefore, three years.[21] Because Patterson brought this action within three years, State Farm's argument is without merit.

## Conclusion

The judgment of the Superior Court is **AFFIRMED**.

STEELE, Chief Justice, and JACOBS, Justice, dissenting:

The text of 18 *Del. C.* § 3902(a) is unambiguous. We disagree with our colleagues' application of the "most significant relationship" tort choice of law analysis to the facts of this case. Therefore, we are compelled to dissent. We dissent because (1) New Jersey tort law should properly apply

17. *Id.* at 1095–96 (citation and quotations omitted).

18. *Cf. Kent County v. Shepherd*, 713 A.2d 290, 301 (Del.1998) ("[P]ublic policy ... favors permitting [plaintiffs] to recover the full amount of monetary damages....")

19. Although the choice of law analysis employed by other states has varied, many states have also concluded that an insured may recover UM benefits in circumstances similar to this case. *See, e.g., Huber Engineered Woods, LLC v. Canal Ins. Co.*, 690 S.E.2d 739, 743 (N.C.App.2010); *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 483, 747 N.E.2d 206 (Ohio 2001); *Holcomb v. Universal Ins. Co.*, 640 So.2d 718 (La.Ct.App.1994); *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936 (N.Y. 1993); *Hartzler v. Am. Fam. Mut. Ins. Co.*, 881 S.W.2d 653, 657 (Mo.App. W.D.1994); *Continental Ins. Co. v. Howe*, 488 So.2d 917 (Fla.Dist.Ct.App.1986); *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43 (Minn.1978); *Lewis v. American Family Ins. Group*, 555 S.W.2d 579 (Ky.1977); *Travelers Indem. Co. v. Stearns*, 116 N.H. 285, 358 A.2d 402 (1976).

20. 443 A.2d 1286 (1982).

21. *See id.* at 1289–90.

to determine whether Patterson is "legally entitled to recover damages" from Armstrong and qualifies to claim UM benefits from State Farm, (2) New Jersey's tort statute of limitations is the relevant limiting statute, and (3) we disagree with the majority's interpretation of and heavy reliance upon two cases—*Kent v. Nationwide Prop. & Cas. Ins. Co.*[22] and *Travelers Indem Co. v. Lake.*[23]

### A. 18 Del. C. § 3902 determines UM benefits to be a form of supplemental insurance and requires a plaintiff to prove a legal entitlement to recover damages from a tortfeasor as a condition precedent to claiming UM benefits.

According to 18 *Del. C.* § 3902(a), all Delaware insurance policies must provide for UM benefits to protect insured drivers who are "legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles."[24] For purposes of this section, "uninsured vehicle" is a defined term encompassing a vehicle covered by insurance, but under which the insurer denies coverage.[25] The public policy supporting Section 3902 is to help insured drivers protect themselves against an irresponsible driver who causes injury or death.[26] The statute effectuates this policy by requiring insurance companies to provide UM benefits as "only supplemental coverage," [27] designed to decrease—not eliminate—the risk of loss to innocent motorists.[28]

The fact that UM benefits generally represent the only recovery an insured driver receives in an accident with an "uninsured" driver does not change the fact that the General Assembly intended UM benefits to be supplementary in nature and did not intend for auto insurance carriers contracting with Delawarians to create an entirely new or alternative damages remedy.[29] Nonetheless, they remain beneficial to insured drivers because they allow insured drivers to "take to the roads knowing 'that a certain amount of protection will always be available' " [30] *whenever they are legally entitled to recover from a tortfeasor.*

Purchased UM benefits exist to provide insurance coverage for an insured driver

. . .

22.  844 A.2d 1092 (Del.Super.2004).

23.  594 A.2d 38 (Del.1991).

24.  18 *Del. C.* § 3902 Uninsured and underinsured vehicle coverage; insolvency of insurer.

   (a) No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run vehicles for bodily injury, sickness, disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle.

25.  18 *Del. C.* § 3902(a)(3)(b). In this case, because Allstate denied Patterson's damages claim, both parties agree that Armstrong was driving an "uninsured vehicle." We agree, as do our colleagues.

26.  *Aetna Cas. & Sur. Co. v. Kenner,* 570 A.2d 1172, 1175 (Del.1990) (citing *Frank v. Horizon Assur. Co.,* 553 A.2d 1199, 1205 (Del. 1989)).

27.  *Lake,* 594 A.2d at 43.

28.  *Frank,* 553 A.2d at 1205.

29.  *See Lake,* 594 A.2d at 42 ("Delaware courts have consistently interpreted Section 3902 as a form of supplemental coverage....").

30.  *Id.* (quoting *Adams v. Delmarva Power & Light Co.,* 575 A.2d 1103, 1107 (Del.1990)).

who would not otherwise receive it because the tortfeasor is "uninsured." Yet, the innocent insured cannot access his UM benefits *at all* unless he can first prove that he is "legally entitled to recover damages" from the "uninsured" tortfeasor.[31] In this sense, a plaintiff's "legal[ ] entitle[ment] to recover damages" from his tortfeasor is a condition precedent to any claim for UM benefits from his own UM coverage provider.

Therefore, analyzing any claim for UM benefits involves a two-step process. The first step involves determining whether the claimant insured is "legally entitled to recover damages" from the tortfeasor. If the claimant insured is not "legally entitled to recover damages" from the tortfeasor, the analysis ends and the claimant insured cannot successfully recover UM benefits from his carrier. Alternatively, if the claimant insured is "legally entitled to recover damages" from the tortfeasor, then the second step involves calculating the proper amount of contractual UM benefits that will compensate him for his damages.

In this case, State Farm argues that Patterson is not "legally entitled to recover damages" from Armstrong at all. Consequently, the dispute in this case centers on the dispositive first step of the UM claim analysis. To answer the question whether Patterson is "legally entitled to recover damages" from Armstrong so that she qualifies for UM benefits, we must first determine the proper law to apply. Because New Jersey tort law should apply to

determine Patterson's "legal[ ] entitle[ment] to recover damages" against Armstrong, we would reverse the Superior Court's judgment and remand the case for additional proceedings consistent with this analysis.

**B.** *New Jersey tort law governs whether Patterson is "legally entitled to recover damages" from Armstrong.*

The majority assert that tort law is the appropriate decisional law to apply in this case. We agree. Although a claim for UM or underinsured benefits arises out of contract, this Court has previously used tort law to assess the underlying damages.[32] Tort law is particularly appropriate in a case where, as here, the parties dispute the first step condition precedent of the UM benefit claim analysis. This approach makes sense, since the relevant parties to consider at this first step are not Patterson and State Farm, but Patterson and Armstrong.[33] Because Patterson and Armstrong have no contract between them, contract law principles have no place in determining their rights and liabilities *vis-à-vis* each other. Instead, their relationship arose out of a car accident. It is therefore governed by tort law, which must govern the determination of the threshold issue whether Patterson is "legally entitled to recover damages" from Armstrong. We differ from our colleagues on the issue of determining whether New Jersey's tort law or Delaware's tort law applies.

---

31. § 3902(a); *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1291 (Del.1981) ("Indeed, a claim for uninsured motorist benefits, by its very nature, becomes 'operative,' not upon the occurrence of a motor vehicle accident, but only after the claimant-insured has established that he/she is 'legally entitled to recover damages from (the) owners or operators of (the) uninsured or hit-and-run motor vehicle.' ").

32. *See, e.g., Rapposelli v. State Farm Mut. Auto. Ins. Co.*, 988 A.2d 425, 429 (Del.2010) (granting the plaintiff prejudgment interest on the basis that his underinsured motorist claim derived from a tort action); *Lake*, 594 A.2d at 42 (using tort law to assess underlying damages).

33. § 3902(a).

This Court no longer adheres to the *lex loci delicti* choice of law standard in tort cases.[34] Instead, we follow the "most significant relationship" test from the Second Restatement of Conflicts.[35] According to Section 145 of the Second Restatement, the law of the state which has the "most significant relationship to the occurrence and the parties under the principles stated in § 6 [of the Second Restatement]" governs tort suits.[36] Specifically, these Section 6 principles are:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the law to be applied.[37]

Also, when applying the "most significant relationship" test, Section 145 requires that we account for the following contacts:

(1) the location where the injury occurred,

(2) the location where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(4) the location where the relationship, if any, between the parties is centered.[38]

Perhaps most importantly, for personal injury claims,[39] Section 146 requires application of the law of the state where the injury occurred unless some other state has a more significant relationship to the occurrence and the parties, in which case the law of that other state should apply.[40]

When applying this "most significant relationship" test, the structure of Section 3902(a) and the posture of this case at step one of the UM benefit claim analysis make Patterson and Armstrong—*not* Patterson and State Farm—the relevant "parties," even though there is no ongoing case between them. This is the case because at this stage the operative question is whether Patterson is "legally entitled to recover damages" from Armstrong, the "operator[ ] of [the] uninsured [ ] vehicle[ ]."[41]

Applied to the facts of this case, Section 146 creates the functional equivalent of a rebuttable presumption that New Jersey tort law applies unless, applying the principles of Section 6 in light of the Section 145 contacts, Delaware, in fact, has the "most significant relationship" with the Patter-

---

34. *See Lake,* 594 A.2d at 46–47 (replacing *lex loci delicti* with the "most significant relationship" test from the Second Restatement of Conflicts).

35. *Id.*

36. Restatement (Second) of Conflicts § 145(1) (1971).

37. Restatement § 6.

38. Restatement § 145(2). We reiterate that in this case, because of the structure of 18 *Del. C.* § 3902(a), the relevant "parties" for choice of law purposes are Patterson and Armstrong, even though there is no ongoing case between them.

39. Patterson's claim against Armstrong would undoubtedly be a negligence claim for personal injury.

40. Restatement § 146.

41. *See* § 3902(a).

son–Armstrong tort based relationship. Applying the Section 6 principles in light of the Section 145 contacts, however, New Jersey has the "most significant relationship" to Patterson's relationship with Armstrong, and New Jersey tort law should apply to determine whether Patterson is "legally entitled to recover damages" from Armstrong. First, considering the Section 145 contacts:

(1) Patterson's injury occurred in New Jersey,

(2) Armstrong rear ended Patterson in New Jersey, causing her injury,

(3) Patterson is from Delaware, but Armstrong is from New Jersey, and

(4) the Patterson–Armstrong relationship is centered in New Jersey because Patterson voluntarily chose to drive on New Jersey's roadways and her alleged injuries arose out of the car accident with a New Jersey driver that occurred on a New Jersey roadway.

These contacts quite clearly favor the application of New Jersey tort law, but they do not end the inquiry. Applying each of the Section 6 principles in light of these Section 145 contacts:

(a) The satisfactory functioning of our interstate system of government is largely premised on the self restraint of states to respect the limits of their spheres of sovereignty and jurisdiction and the corresponding obligation of other states to exercise their sovereignty and jurisdiction to the extent of their respective spheres.

(b) The relevant policy of Delaware involves no limit on tort recoveries to any "verbal threshold" and no need to prove permanent injury in order to recover money damages.

(c) The relevant policy of New Jersey involves limiting tort recovery to those plaintiffs who can successfully pierce the "verbal threshold." [42] Considering these Section 6 principles in light of the Section 145 contacts, as the Second Restatement requires, New Jersey's policy interest becomes significant in this case. After all, the injury happened in New Jersey as a result of the conduct of a New Jersey resident on roads governed by New Jersey traffic and other laws. Also, New Jersey authorities are in the best position to manage and resolve issues related to the accident itself.

(d) In terms of protecting justified expectations, Patterson voluntarily chose to operate her car on New Jersey roads. Therefore, she should expect to be able to assert those legal rights and to be subject to those legal responsibilities created and defined by New Jersey laws that pertain to her operation of her car in that state.

(e) The basic policy underlying UM benefits is to provide "*only supplemental* coverage to protect Delaware drivers from uninsured motorists." [43] The term "supplemental" means something distinctly different than

---

**42.** We agree with the majority's characterization of New Jersey's "verbal threshold" statute and the fact that the parties dispute whether Patterson's alleged injuries are sufficiently permanent to defeat the statute's limitation on recovery. While we address this issue later, we merely point out here that despite Patterson's $20,000 damages award, no authority has yet decided, implicitly or explicitly, that Patterson's injuries are sufficiently permanent to pierce the verbal threshold.

**43.** *Lake*, 594 A.2d at 43 (citing *Adams*, 575 A.2d at 1107; *Frank*, 553 A.2d at 1205; *State Farm Mut. Auto. Ins. Co. v. Hallowell*, 426 A.2d 822, 826 (Del.1981)) (emphasis added).

the term "alternative." Moreover, as explained above, the policy of Section 3902 is to "permit[ ] a Delaware motorist to 'mirror' his own liability coverage and take to the roads knowing 'that a certain amount of protection will always be available.' "[44] The word "mirror" is significant in this context. UM benefits are supposed to provide supplemental coverage to insured drivers to the extent that the driver would otherwise be able to recover directly from the tortfeasor, were that tortfeasor "insured." The General Assembly did not design UM benefits to allow a plaintiff to sidestep applicable law and recover according to a more favorable legal regime.

(f) Neither New Jersey nor Delaware law will necessarily yield disproportionately uncertain, unpredictable, or chaotic results.

(g) Neither New Jersey nor Delaware law will necessarily be more difficult to ascertain or apply. This principle, along with Principle (f), neither favors applying New Jersey nor Delaware law.

Considering these Section 6 principles in light of the Section 145 contacts and against the background of the Section 146 rebuttable presumption, in this case we would hold that New Jersey tort law governs whether Patterson is "legally entitled to recover damages" from Armstrong.

### C. *Lake is inapposite to our disposition in this case and the judge in Kent applied the "most significant relationship" analysis to the wrong parties.*

Our conclusion that New Jersey has the "most significant relationship" in this case diverges from the majority's conclusion, which relied heavily on the choice of law analyses in both *Lake* and *Kent.* We do not agree with the majority's assertion that *Lake* is directly on point in this case—we believe *Lake* is inapposite here. We also believe *Kent* applies the choice of law analysis incorrectly.

The issues presented in this case and in *Lake* are quite different. In *Lake,* this Court applied the "significant relationship test" and determined that Delaware law applied to the calculation of Lake's damages.[45] In *Lake,* however, the parties stipulated that the plaintiff was "legally entitled to recover," and the only issue was the amount of recovery.[46] In other words, the parties in *Lake* did not dispute the satisfaction of the condition precedent to Lake's claim for UM benefits—the precise issue this appeal presents. There, this Court resolved the second step of the UM benefits claim analysis without addressing the first step.

After resolving the condition precedent under the law of the jurisdiction with the most significant relationship to the tort, Delaware law *should* govern the calculation of benefits, as *Lake* illustrates. The amount of recovery arises out of a Delaware contract signed by a Delaware resident and a Delaware insurance company. This case, however, concerns which law governs the threshold right to recover at all—not the amount of the judgment. To be sure, *Lake* establishes that Delaware has a "significant relationship" to the calculation of UM benefits and a strong public policy interest in governing step two of the UM benefits claim analysis. Indeed, this determination is as true today as it

---

44. *Lake,* 594 A.2d at 42 (quoting *Adams,* 575 A.2d at 1107).

45. *Lake,* 594 A.2d at 48.

46. *See id.* at 40.

was when this Court decided *Lake*. It is inapposite, though, to our disposition in this case, which focuses on which state's law should govern the condition precedent that Patterson be "legally entitled to recover damages" from Armstrong.

Our determination that New Jersey has the "most significant relationship" in this case also appears at odds with the Superior Court judgment in *Kent*, which had nearly identical facts. In that case, the judge applied the "most significant relationship" test to the insured plaintiff and her insurance carrier, determined that Delaware law should apply, and ruled that Kent was "legally entitled to recover" to the extent she could prove fault and damages.[47] Our colleagues invoke *Kent* as persuasive authority and adopt the same approach as the judge in *Kent* by applying the "most significant relationship" test to Patterson and State Farm. We believe *Kent* misapplied the conflict of law principles in two respects, and therefore reject its analysis.

First, the contract between Kent and her insurance carrier defined their legal rights and obligations. Those contract rights could only be triggered by, but not defined by, a third party. Therefore, to determine which law would govern the extent of their rights and duties *vis-à-vis* each other, the judge should have applied a true contract choice of law analysis. Yet, she ostensibly applied a tort choice of law analysis.[48] Second, and more immediately important, the judge applied the tort choice of law analysis to the wrong parties. The General Assembly mandates that at this condition precedent first stage of a UM benefits claim analysis, the question must be whether Kent was "legally entitled to recover damages" from a tortfeasor—not her own UM carrier. By the clear language of Section 3902(a), the question was whether Kent was "legally entitled to recover damages from [the] owner[ ] or operator[ ] of [the] uninsured or hit-and-run vehicle[ ]," not whether the contract required the carrier to pay an amount of damages to be determined at the second (injury) stage. Therefore, the relevant parties for purposes of conflicts analysis were not Kent and her insurance carrier, but rather Kent and the tortfeasor.

Similarly, in our case, Patterson and State Farm are not the relevant parties. Patterson and Armstrong are the relevant parties. Therefore, we cannot agree with the majority's reliance on Patterson and State Farm in its conflicts of law analysis. Our colleagues cite *Kent County v. Shepherd*[49] for the proposition that Delaware has a significant public policy interest in supporting its citizens' ability to recover the full amount of actual damages in cases like this. As accurate a characterization of Delaware public policy as this may be, the statutory language in Section 3902(a) is unambiguous.[50] Indeed, regardless of policy concerns, it is not within our province to rewrite the statute to suit our favored policy. If it is thought desirable to rewrite the statute to more clearly state a desired policy or to create order in a setting of divergent understandings, that is clearly the sole province of the General Assembly. We cannot—nor should we—attempt to alter that well-established division of responsibility, regardless of whether we believe

47. *Kent*, 844 A.2d at 1096, 1098.

48. *Id.* at 1095.

49. 713 A.2d 290 (Del.1998).

50. *Nationwide Mut. Ins. Co. v. Nacchia*, 628 A.2d 48, 52 (Del.1993) (citing *Lake*, 594 A.2d at 42 n. 2, for the proposition that "legally entitled to recover" is "unambiguous" and must be "construed literally").

alternative statutory language would more clearly illuminate the General Assembly's actual intent.

**D.** *The applicable New Jersey tort statute of limitations applies in this case, but because Patterson filed suit in Delaware within two years of the New Jersey accident, we must remand this matter to the Superior Court for a determination whether Patterson's injuries are sufficiently permanent to pierce New Jersey's verbal threshold, "entitle[ ] [her] to recover damages" from Armstrong, and qualify her to recover contractual UM benefits from State Farm.*

Allstate denied Patterson's claim for damages because it determined that Patterson could not pierce New Jersey's verbal threshold. Of course, Allstate's initial determination to reject Patterson's claim is not dispositive. A court of competent jurisdiction would have to decide the issue according to New Jersey tort law. Any court, so long as it has jurisdiction over the parties and the underlying UM claim, could decide whether Patterson could pierce New Jersey's verbal threshold—a question of New Jersey tort law.

In this case, either a New Jersey court in a direct claim by Patterson against Armstrong, or a Delaware court in Patterson's contract claim for damages against State Farm, could decide whether Patterson's injuries pierced New Jersey's verbal threshold, thus entitling her to recover. Several weeks after Allstate denied her claim, Patterson sued State Farm in Delaware Superior Court on April 16, 2008. In her order denying State Farm's Motion for Summary Judgment, the Superior Court

judge determined, on the basis of the *Kent* opinion, that Patterson could recover UM benefits to the extent she could prove fault and damages. The parties stipulated to an inquisition on the issue of damages before a Superior Court Commissioner. The Superior Court Commissioner determined during the inquisition that Patterson suffered damages totaling $20,000, but she made no finding, explicitly or implicitly, either that Armstrong's negligence proximately caused Patterson's injury or that Patterson's damages were permanent and, therefore, pierced the New Jersey verbal threshold. The Commissioner did no more than what the parties asked her to do: complete the second stage analysis in part and determine the amount of damages recoverable under Delaware—not New Jersey—law. The Superior Court judge, on February 16, 2010, entered the Commissioner's determination as a final judgment.

In *Spinelli*, this Court held that a contract statute of limitations applied to a UM benefit claim, and the statute began to run on the date that Spinelli's insurance company first denied his request for UM benefits.[51] The majority cites *Spinelli* as controlling in this case and applies a three year statute of limitations. That determination is largely irrelevant because Patterson brought suit in Delaware within two years of the accident. We believe the determination in *Spinelli* is inapplicable to Patterson. As in *Lake*, this Court focused in *Spinelli* on the second step of the UM benefits claim analysis. The *Spinelli* opinion makes this very clear, by carefully explaining that there are two stages to cases like these—the first step determination that an insured driver is "legally entitled to recover damages" from a tortfeasor and the second step calculation and recovery of UM benefits.[52] Ultimately, in *Spi-*

51. *Spinelli*, 443 A.2d at 1292.

52. *Id.* at 1291 ("[A] claim for uninsured motorist benefits, by its very nature, becomes

*nelli*, this Court held only that a *contract* statute of limitations applies to the *contractually based second step* of the analysis.

Because the immediate case focuses on the first step of the analysis—a tort question governed by New Jersey law—it is subject to the New Jersey tort statute of limitations, which precludes personal injury claims commenced more than two years after the cause of the injury.[53] Armstrong injured Patterson on February 1, 2007. Therefore, any tort claim Patterson had against Armstrong must be commenced before February 1, 2009. This makes no difference in the present case, however, because Patterson's filing against State Farm on April 16, 2008 triggered a Delaware action which should have proceeded in two phases. First, the Delaware court must determine that Patterson could recover against Armstrong, the uninsured motorist. Second, if that entitlement is established, the court must determine the contractual amount of damages State Farm owes.

Because neither the Commissioner nor the Superior Court determined, explicitly or implicitly, that Patterson's damages were sufficiently permanent to pierce New Jersey's verbal threshold, we cannot yet know whether New Jersey tort law makes Patterson "legally entitled to recover damages" from Armstrong. Consequently, she has not yet satisfied the condition precedent that she prove a "legal entitle[ment] to recover damages" from Armstrong.

For these reasons, we believe the Superior Court erred as a matter of law when it denied State Farm's Motion for Summary Judgment and entered a final judgment awarding Patterson UM benefits because she proved "fault" and damages under Delaware law.[54] The Superior Court judge should have, but did not, determine first whether Patterson's injuries pierced the New Jersey "verbal threshold" entitling her to recover under New Jersey law. Because we would reverse the Superior Court judgment and remand for proceedings to determine whether Patterson was "legally entitled to recover damages" from Armstrong under New Jersey law, we respectfully dissent.

---

'operative,' ... *only after* the claimant-insured has established that he/she is 'legally entitled to recover damages from (the) owners or operators of (the) uninsured or hit-and-run motor vehicle.' ") (emphasis added).

**53.** N.J. Stat. Ann. § 2A:14–2.

**54.** To our knowledge, no record evidence exists that the parties agreed to a "fault" determination of any kind. The only hearing conducted was an inquisition on damages. The parties agreed only that Armstrong was "uninsured" under Delaware law.